HENRIETTA WEINBERGER, as Administratrix, etc., of ALBERT WEINBERGER, Respondent, v. CYRIL J. C. QUINN and Others, as Executors, etc., of EARLE BAILIE, EDGAR H. DIXON, JOE H. GILL, ERNEST W. HILL, ARTHUR F. HOFFMAN, FRANCIS F. RANDOLPH, HAROLD F. SANDERS, D. M. SPENCER, UNITED GAS CORPORATION and ELECTRIC BOND AND SHARE COMPANY, Appellants, Impleaded with ARTHUR B. GROESBECK and Others, Defendants.

First Department, June 19, 1942.

*Russell C. Gay* of counsel [*James L. Boone* and *Ralph M. McDermid* with him on the brief; *Reid & Priest*, attorneys], for the appellant Electric Bond and Share Company; *Louis Connick* [*Benjamin C. Milner* with him on the brief; *Simpson, Thacher & Bartlett*, attorneys], for the individual appellants Cyril J. C. Quinn and others, as executors, etc., of Earle Bailie, Edgar H. Dixon, Joe H. Gill, Ernest W. Hill, Arthur F. Hoffman, Francis F. Randolph, Harold F. Sanders and D. M. Spencer.

*J. Adam Murphy* of counsel [*Adrian L. Foley* with him on the brief; *White & Case*, attorneys], for the appellant United Gas Corporation.

*Harold L. Fierman* of counsel [*Kaye, Scholer, Fierman & Hays* and *Milton Kunen* with him on the brief; *Theodore G. Weinberger*, attorney], for the respondent.

CALLAHAN, J. This is a derivative suit by a holder of fifty shares of common stock of the United Gas Corporation (hereinafter called " United ") out of a total of 7,818,959 such shares, to compel the defendants to account for certain alleged misconduct in connection with the corporate affairs of United. In essence, the plaintiff's complaint is that the defendant Electric Bond and Share Company (hereinafter called " Bond and Share "), through stock ownership, dominated and controlled United; that during the years involved herein United owed Bond and Share approxi-

mately $28,000,000, secured by a demand note bearing six per cent interest, and that from 1936 to date, United, instead of paying off part of this note, has paid past due dividends totaling about $18,000,000 on its outstanding shares of cumulative preferred stock.

Plaintiff asks that the defendants be directed to account for the acts complained of; that Bond and Share be directed to pay over to United all dividends received on the shares of first preferred stock held by it, and that the defendant United and its officers be enjoined from declaring or paying further dividends until it pays its debt to Bond and Share.

The alleged domination of Bond and Share over United is based upon the charge that Electric Power and Light Corporation, an affiliate, owns forty-eight and five-tenths per cent of the common stock of United, and that Bond and Share owns nine and sixty-three one-hundredths per cent of said common stock. The complaint states that, by reason of this controlling stock interest, Bond and Share has secured the election of the individual defendants as directors of United, and dominates and controls them. The complaint charges that the payment of dividends, instead of the reduction of the debt, was done fraudulently and in bad faith, and in pursuance of a plan and conspiracy to use the control which the " parent " corporation exercises to unjustly enrich the " parent " to the detriment of United. But aside from these general charges, not a single fact is set forth in the complaint, in addition to the alleged improper payment of dividends, to show any fraud or other misconduct, nor is there any allegation that any director secured any personal benefit from the alleged payment.

Attached to the complaint are copies of the annual balance sheets of United for the years 1936 to 1940, inclusive, which show the existence of sufficient surplus in each of those years with which to pay the accumulated preferred dividends referred to, and no claim is made by plaintiff that the payment of such dividends was illegal.

Plaintiff alleges that, as the accumulation of dividends on preferred stock did not appear as a liability on the statement of the corporation and did not subject the company to interest, the reduction of the indebtedness to the " parent,". to the extent which the moneys used for payment of accumulated dividends would have reduced it, would have effected a saving in interest. Damage to United rests solely on the failure to effect this saving.

The question presented is whether a complaint of this nature states a cause of action with respect to the corporate transactions referred to, which would warrant a court of equity in affording relief in a derivative stockholder's action.

We find the complaint insufficient. The $28,000,000 represented a loan from an associated company, payment of which, as the complaint shows, was not demanded by the lender. The choice made by the directors in respect to payment of accumulated dividends — assuming that it was made upon a conscientious exercise of judgment — would clearly be legal and entirely proper. Determination of such matters as the declaration and payment of dividends belongs in the first instance to corporate directors. They are required to give due consideration to the company's business, property and affairs as a whole in making such determination. Ordinarily a decision on such a question is within the discretionary powers of the directors, and will not be interfered with by the courts. (*New York, Lake Erie & Western Railroad* v. *Nickals*, 119 U. S. 296; *Beveridge* v. *N. Y. Elevated R. R. Co.*, 112 N. Y. 1.)

While a court of equity will protect a corporation at the insistence of a minority stockholder against conduct of directors which is in breach of their trust, the courts do not pass on or assume to pass on questions of mere business judgment or expediency. Facts showing bad faith or other breach of duty must be alleged before a court will interfere. (*City Bank Farmers Trust Co.* v. *Hewitt Realty Co.*, 257 N. Y. 62.)

The choice made by the directors of United to pay dividends instead of paying off the indebtedness to Bond and Share was not an act which of itself raised any presumption of fraud. Concededly, the directors had a choice between two courses: they might pass dividends on preferred stock and permit unpaid preferred dividends to accumulate, with whatever result that action might bring about, or they might reduce their company's indebtedness and save money in interest payments. This choice involved a determination that affected not only United and the so-called " parent " corporation, which was both a creditor and a stockholder of United, but directly affected the rights of many other preferred stockholders. Bond and Share owned only 17,310 out of a total of 449,822 first preferred shares. The credit of United, its financial standing and other similar factors were elements to be weighed by the directors in making the choice. Whether the continuation of the payment of interest charges was warranted under such circumstances was peculiarly a question of internal corporate management. The ability of United to use profitably the money borrowed from Bond and Share was a like consideration. That corporations frequently borrow money in order to enable them to do business profitably is a matter of which we may take judicial cognizance.

Use of surplus to pay dividends, where such action creates no additional liability on the part of the corporation, is in accordance

with the law, though an outstanding indebtedness of the present nature exists. Whether such payment is wise or unwise is not a matter for legal determination, and of itself the decision of this problem affords no basis for the use of the judicial process.

Stripped of the conclusory statements of domination, control, fraud and conspiracy, this complaint makes out no case beyond that which might be inferred from the statement of the choice made by the directors. To charge a conspiracy upon the basis of these facts alone states no actionable cause.

The courts have frequently pointed out that, in the absence of allegations of fact, as distinguished from conclusory characterization of acts as fraudulent or wrongful, a complaint in this form of action is insufficient. (*Gerdes* v. *Reynolds*, 281 N. Y. 180; *Rous* v. *Carlisle*, 258 App. Div. 781; see, also, S. C., 261 id. 432.)

We appreciate that the distinction between the statement of an ultimate fact and the statement of legal conclusions is at times a close one, particularly when the state of mind of the actor is a matter to be described. Under certain circumstances, the courts may be inclined to consider statements of such nature as statements of ultimate fact, but charges such as those of wrongful intent should be scrutinized with particular care where the facts narrated in support thereof justify no inference of misconduct, but relate to transactions innocent on their face.

If the payment of dividends out of surplus is to be subjected to judicial scrutiny merely because a corporation has an outstanding indebtedness, then every dividend declared by any corporation under such circumstances might be made an actionable wrong by a mere charge of domination or control, or by a conclusory allegation of fraud. We have recently pointed out that domination and control of themselves do not subject the stockholder maintaining same to liability, unless in connection therewith said stockholder usurps the functions of the directors in the management and conduct of the business to the detriment of the corporation and the minority. (*Blaustein* v. *Pan American Petroleum & Transport Co.*, 263 App. Div. 97.)

A stockholder's derivative suit may be a useful agency or it may be grossly abused for purposes far removed from any desire to do a service to the corporation represented. The prevalence of suits of the latter nature appears to have recently caused the Legislature to enact a statute requiring the corporation to pay the expenses of directors who are successful on the trial of this form of action. (Gen. Corp. Law, § 61-a, added by Laws of 1941, chap. 350.)

When we find a stockholder, owning fifty shares out of upwards of 7,000,000 shares, seeking to enforce alleged rights of his company, with the possibility of subjecting it to these large statutory costs and expense in the event of failure, we think it is the duty of the courts to require at least the statement of more than a mere general charge of wrongdoing before resort to equity may be had. We indicate no new test of the legal sufficiency of a complaint in requiring that facts instead of general conclusory charges be alleged. (*Gerdes* v. *Reynolds, supra.*)

The case of *Kavanaugh* v. *Kavanaugh Knitting Co.* (226 N. Y. 185), relied on by Special Term, held nothing contrary to the views here expressed. There, as the Court of Appeals indicated in its opinion, facts were alleged which permitted, if they did not compel, the inference of bad faith. We find no such allegation of facts in the present complaint.

The orders should be reversed, each with ten dollars costs and disbursements, and the motions granted.

MARTIN, P. J., DORE and COHN, JJ., concur; UNTERMYER, J., dissents and votes to affirm.

Orders reversed, each with ten dollars costs and disbursements, and the motions granted.