JACK AMDUR et al., Respondents, *v.* MALCOLM MEYER et al., Defendants, and A. J. HETTINGER, JR., Appellant.

First Department, February 21, 1962.

*James E. Nickerson* of counsel (*L. Robert Fullem* with him on the brief; *Dewey, Ballantine, Bushby, Palmer & Wood,* attorneys), for appellant.

*Philip Mandel* of counsel (*Golden, Wienshienk, Rosenthal & Mandel* with him on the brief; *Louis C. Fieland,* attorney), for respondents.

BASTOW, J. This stockholders' derivative action was brought by three stockholders of defendant Bestwall Gypsum Company (hereinafter "Bestwall"), a Maryland corporation, for judgment decreeing that 3,778 shares of Bestwall issued by it were void and requiring the individual defendants to account to the

corporation for losses sustained by it and for profits made by them. The individual defendants are directors, officers and employees of Bestwall but only appellant, a director, has been served.

The litigation grows out of certain options granted by the directors of Bestwall in 1956 to seven officers and employees of the corporation to purchase a total of 26,600 shares of Bestwall common stock at $50 per share, a price determined by the board to be 100% of the then fair market value of the stock. Each option agreement contains a provision for the adjustment of option price and number of shares subject to the option in the event of common stock capitalization through recapitalization resulting in stock split-ups. It is conceded, however, that the agreements, as originally executed, made no provision for stock dividends. Subsequently, the stockholders of Certain-teed Products Corporation and the latter, as the then sole stockholder of Bestwall, approved and confirmed the agreements. At the same time the stockholders of Certain-teed authorized a spin-off of the stock of Bestwall to the stockholders of Certain-teed.

The complaint contains no attack on the actions so taken in connection with the granting of these options or the making of the agreements. The claimed wrongful acts relate to subsequent happenings. In May, 1957 the directors of Bestwall authorized the declaration of a 3% stock dividend. Thereafter the corporation applied for the listing on the New York Stock Exchange of additional shares of its common stock to provide for the stock dividend. A year later, in May, 1958, a second 3% stock dividend was declared. The effect of the grant of these two stock dividends was to increase by 43,551 the number of shares outstanding and correspondingly to dilute by approximately 6% the stock interest granted to the optionees when equated to issued outstanding stock. At the same meeting the directors adopted a resolution providing that the option agreements were to be construed as expressly providing that in the event of any change in common stock capitalization through declaration of stock dividends, or through recapitalizations resulting in stock split-ups, the option price and number of shares subject to any option should be adjusted accordingly. There were then 25,800 shares subject to option and such number was increased to 27,367 and the option price was decreased from $50 to $47.14 per share. The mean price of the stock on the New York Stock Exchange was then $47.125. These adjustments implemented the agreement as so construed by the directors. Subsequently, and in 1960 the proxy statement of Bestwall contained a complete recital of the foregoing facts, including the

commencement of this action. One of the purposes stated in the notice for the 1960 annual meeting was to consider and vote upon ratification of the adjustments in number of shares and price with respect to these stock options. At the meeting the action of the directors was ratified and approved by an overwhelming vote.

The appellant, as stated, is a director of Bestwall and had no beneficial interest in the options. The sole basis for seeking relief against him is that he, as a director, voted for the adjustments thereof. In moving for summary judgment defendant contended that the documentary evidence establishes that there is no triable issue. He maintains that the submitted facts establish that the option agreement and subsequent adjustments were made to provide an incentive for the optionees as valuable personnel of Bestwall; that the adjustments were made to prevent a dilution in the stock interest of the optionees; that the proposed resolution for adjustment of the options was a matter of the internal management of the affairs of the corporation and called upon him to exercise his best business judgment and that the action taken by him was proper and valid.

Respondents contend that the directors by the adjustment made a gift to the optionees which was not contemplated by the provisions of the original agreement. They submit that the directors under the guise of interpreting the agreement in fact amended the document. They argue that the action taken was a subterfuge because amendment of the agreement would have presented tax problems and would have required revelation in proxy and annual statements.

We find no merit to respondents' contentions in the light of the facts presented. Neither do we find it necessary to determine whether the 1958 action was an '' interpretation '', '' construction '' or '' modification '' of the basic agreements. The directors had the general power to do any act which fell within what properly might be regarded as the management of the ordinary business of the corporation. '' The power and authority in the directors to manage and conduct the affairs of the corporation are absolute so long as they act in accordance with their best judgment, and, in the absence of a dishonest purpose, or of fraud, bad faith, or negligence so gross as to amount to a breach of trust, their discretion will not be reviewed by the court in an action attacking their conduct.'' (2 Fletcher, Cyclopedia of Corporations [Perm. ed.], § 505, p. 551.)

The basic option agreements, as has been stated, are not the subject of attack and appear to be legal and valid. (Cf. 5 Fletcher, Cyclopedia of Corporations [Perm. ed.], §§ 2143,

2143.1.) It is a recognized principle that "All stock option plans must be tested against the requirement that they contain conditions, or that surrounding circumstances are such, that the corporation may reasonably expect to receive the contemplated benefit from the grant of the options. Furthermore, there must be a reasonable relationship between the value of the benefits passing to the corporation and the value of the options granted." (*Beard* v. *Elster,* 160 A. 2d 731, 737 [Del.].)

The subsequent action of the directors in making the adjustments was prompted by changed conditions. It may be assumed that Bestwall prospered financially and in successive years stock dividends were declared. The impact of this was then realized. The outstanding shares of common stock by the declaration of these stock dividends had been increased from 715,145 to 758,696 with a resulting dilution in the benefits intended to be conferred upon the optionees. The directors, with the general power to do any act which fell within what properly might be regarded as the management of the ordinary business of the corporation, by their resolution in substance said that in the light of subsequent events the basic agreements did not convey the benefits the directors had originally intended to confer. Appellant, as a director and not an option beneficiary, voted for the resolution. It makes small difference what label is attached to the resulting change in the basic agreements. No facts have been adduced to show that appellant in so voting was acting other than in the exercise of his best judgment which was subsequently confirmed by the stockholders.

It has been written that "the fixation of compensation to executive officers and employees of a corporation is a question of internal management to be determined by the corporation itself in which neither the people of the state nor the public generally [are] interested; and the stockholders [are] entitled to determine what, if any, compensation should be paid to the officers; and a minority stockholder disagreeing with the majority [has] no right to impose his will upon the majority and thus control the action of the corporation." (*Diamond* v. *Davis,* 38 N. Y. S. 2d 103, 126–127, affd. 265 App. Div. 919, affd. 292 N. Y. 554.)

It is recognized that even majority stockholders cannot make gifts of corporate assets for other than charitable purposes over the protests of minority stockholders. (6A Fletcher, Cyclopedia of Corporations [Perm. ed.], § 2939.) The authorities relied upon by respondents to sustain their contention that the action here taken constituted a gift without consideration are inapposite. While the benefit conferred may be "incapable of measurement except in terms of business judgment" (*Beard* v.

*Elster, supra,* p. 736), the additional rights granted were not a gift but something from which the corporation might reasonably expect benefit to flow to the corporation. We find no triable issue.

The order appealed from should be reversed, on the law, with costs, and the motion to dismiss the complaint granted.

BOTEIN, P. J., BREITEL, RABIN and VALENTE, JJ., concur.

Order, entered on March 17, 1961, unanimously reversed, on the law, with $20 costs and disbursements to the appellant, and the motion to dismiss the complaint granted, with $10 costs.