Edward J. Greenfield, J.
In this stockholders’ derivative action, the individual defendants, who are the directors of the American Express Company, move for an order dismissing the complaint for failure to state a cause of action pursuant to CPLR 3211 (subd [a], par 7), and alternatively, for summary judgment pursuant to CPLR 3211 (subd [c]).
The complaint is brought derivatively by two minority stockholders of the American Express Company, asking for a declaration that a certain dividend in kind is a waste of *811 corporate assets, directing the defendants not to proceed with the distribution, or, in the alternative, for monetary damages. The motion to dismiss the complaint requires the court to presuppose the truth of the allegations. It is the defendants’ contention that, conceding everything in the complaint, no viable cause of action is made out.
After establishing the identity of the parties, the complaint alleges that in 1972 American Express acquired for investment 1,954,418 shares of common stock of Donaldson, Lufken and Jenrette, Inc. (hereafter DLJ), a publicly traded corporation, at a cost of $29,900,000. It is further alleged that the current market value of those shares is approximately $4,000,-000. On July 28, 1975, it is alleged, the board of directors of American Express declared a special dividend to all stockholders of record pursuant to which the shares of DLJ would be distributed in kind. Plaintiffs contend further that if American Express were to sell the DLJ shares on the market, it would sustain a capital loss of $25,000,000 which could be offset against taxable capital gains on other investments. Such a sale, they allege, would result in tax savings to the company of approximately $8,000,000, which would not be available in the case of the distribution of DLJ shares to stockholders. It is alleged that on October 8, 1975 and October 16, 1975, plaintiffs demanded that the directors rescind the previously declared dividend in DLJ shares and take steps to preserve the capital loss which would result from selling the shares. This demand was rejected by the board of directors on October 17, 1975.
It is apparent that all the previously-mentioned allegations of the complaint go to the question of the exercise by the board of directors of business judgment in deciding how to deal with the DLJ shares. The crucial allegation which must be scrutinized to determine the legal sufficiency of the complaint is paragraph 19, which alleges: "19. All of the defendant Directors engaged in or acquiesced in or negligently permitted the declaration and payment of the Dividend in violation of the fiduciary duty owed by them to Amex to care for and preserve Amex’s assets in the same manner as a man of average prudence would care for his own property.”
Plaintiffs never moved for temporary injunctive relief, and did nothing to bar the actual distribution of the DLJ shares. The dividend was in fact paid on October 31, 1975. Accordingly, that portion of the complaint seeking a direction not to *812 distribute the shares is deemed to be moot, and the court will deal only with the request for declaratory judgment or for damages.
Examination of the complaint reveals that there is no claim of fraud or self-dealing, and no contention that there was any bad faith or oppressive conduct. The law is quite clear as to what is necessary to ground a claim for actionable wrongdoing. "In actions by stockholders, which assail the acts of their directors or trustees, courts will not interfere unless the powers have been illegally or unconscientiously executed, or unless it be made to appear that the acts were fraudulent or collusive and destructive of the rights of the stockholders. Mere errors of judgment are not sufficient as grounds for equity interference; for the powers of those entrusted with corporate management are largely discretionary.” (Leslie v Lorillard, 110 NY 519, 532; see, also, Winter v Anderson, 242 App Div 430, 432; Rous v Carlisle, 261 App Div 432, 434, affd 290 NY 869; 11 NY Jur, Corporations, § 378.)
More specifically, the question of whether or not a dividend is to be declared or a distribution of some kind should be made is exclusively a matter of business judgment for the board of directors. "Courts will not interfere with such discretion unless it be first made to appear that the directors have acted or are about to act in bad faith and for a dishonest purpose. It is for the directors to say, acting in good faith of course, when and to what extent dividends shall be declared * * * The statute confers upon the directors this power, and the minority stockholders are not in a position to question this right, so long as the directors are acting in good faith” (Liebman v Auto Strop Co., 241 NY 427, 433-434; accord: City Bank Farmers Trust Co. v Hewitt Realty Co., 257 NY 62; Venner v Southern Pacific Co., 279 F 832, cert den 258 US 628).
Thus, a complaint must be dismissed if all that is presented is a decision to pay dividends rather than pursuing some other course of conduct. (Weinberger v Quinn, 264 App Div 405, affd 290 NY 635.) A complaint which alleges merely that some course of action other than that pursued by the board of directors would have been more advantageous gives rise to no cognizable cause of action. Courts have more than enough to do in adjudicating legal rights and devising remedies for wrongs. The directors’ room rather than the courtroom is the appropriate forum for thrashing out purely business questions *813 which will have an impact on profits, market prices, competitive situations, or tax advantages. As stated by Cardozo, J., when sitting at Special Term, the substitution of someone else’s business judgment for that of the directors " 'is no business for any court to follow.’ ” (Holmes v Saint Joseph Lead Co., 84 Misc 278, 283, quoting from Gamble v Queens County Water Co., 123 NY 91, 99.)
It is not enough to allege, as plaintiffs do here, that the directors made an imprudent decision, which did not capitalize on the possibility of using a potential capital loss to offset capital gains. More than imprudence or mistaken judgment must be shown. "Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.” (Pollitz v Wabash R.R. Co., 207 NY 113, 124.)
Section 720 (subd [a], par [1], cl [A]) of the Business Corporation Law permits an action against directors for "[t]he neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.” This does not mean that a director is chargeable with ordinary negligence for having made an improper decision, or having acted imprudently. The "neglect” referred to in the statute is neglect of duties (i.e., malfeasance or nonfeasance) and not misjudgment. To allege that a director "negligently permitted the declaration and payment” of a dividend without alleging fraud, dishonesty or nonfeasance, is to state merely that a decision was taken with which one disagrees.
Nor does this appear to be a case in which a potentially valid cause of action is inartfully stated. The defendants have moved alternatively for summary judgment and have submitted affidavits under CPLR 3211 (subd [c]), and plaintiffs likewise have submitted papers enlarging upon the allegations of the complaint. The affidavits of the defendants and the exhibits annexed thereto demonstrate that the objections raised by the plaintiffs to the proposed dividend action were carefully considered and unanimously rejected by the board at a special meeting called precisely for that purpose at the plaintiffs’ request. The minutes of the special meeting indicate that the *814 defendants were fully aware that a sale rather than a distribution of the DLJ shares might result in the realization of a substantial income tax saving. Nevertheless, they concluded that there were countervailing considerations primarily with respect to the adverse effect such a sale, realizing a loss of $25,000,000, would have on the net income figures in the American Express financial statement. Such a reduction of net income would have a serious effect on the market value of the publicly traded American Express stock. This was not a situation in which the defendant directors totally overlooked facts called to their attention. They gave them consideration, and attempted to view the total picture in arriving at their decision. While plaintiffs contend that according to their accounting consultants the loss on the DLJ stock would still have to be charged against current earnings even if the stock were distributed, the defendants’ accounting experts assert that the loss would be a charge against earnings only in the event of a sale, whereas in the event of distribution of the stock as a dividend, the proper accounting treatment would be to charge the loss only against surplus. While the chief accountant for the SEC raised some question as to the appropriate accounting treatment of this transaction, there was no basis for any action to be taken by the SEC with respect to the American Express financial statement.
The only hint of self-interest which is raised, not in the complaint but in the papers on the motion, is that 4 of the 20 directors were officers and employees of American Express and members of its executive incentive compensation plan. Hence, it is suggested, by virtue of the action taken earnings may have been overstated and their compensation affected thereby. Such a claim is highly speculative and standing alone can hardly be regarded as sufficient to support an inference of self-dealing. There is no claim or showing that the four company directors dominated and controlled the 16 outside members of the board. Certainly, every action taken by the board has some impact on earhings and may therefore affect the compensation of those whose earnings are keyed to profits. That does not disqualify the inside directors, nor does it put every policy adopted by the board in question. All directors have an obligation, using sound business judgment, to maximize income for the benefit of all persons having a stake in the welfare of the corporate entity. (See Amdur v Meyer, 15 AD2d 425, app dsmd 14 NY2d 541.) What we have here as revealed *815 both by the complaint and by the affidavits and exhibits, is that a disagreement exists between two minority stockholders and a unanimous board of directors as to the best way to handle a loss already incurred on an investment. The directors are entitled to exercise their honest business judgment on the information before them, and to act within their corporate powers. That they may be mistaken, that other courses of action might have differing consequences, or that their action might benefit some shareholders more than others present no basis for the superimposition of judicial judgment, so long as it appears that the directors have been acting in good faith. The question of to what extent a dividend shall be declared and the manner in which it shall be paid is ordinarily subject only to the qualification that the dividend be paid out of surplus (Business Corporation Law, § 510, subd [b]). The court will not interfere unless a clear case is made out of fraud, oppression, arbitrary action, or breach of trust.
Courts should not shrink from the responsibility of dismissing complaints or granting summary judgment when no legal wrongdoing is set forth. As stated in Greenbaum v American Metal Climax (27 AD2d 225, 231-232): "It is well known that derivative actions by stockholders generally involve extensive pretrial procedures, including lengthy examinations before trial, and then, finally, prolonged trials; and that they also entail large litigation costs, including the probability of a considerable liability upon the corporation for the defense costs of defendant offices. Such actions are a heavy burden upon the courts and litigants. Consequently, the summary judgment remedy should be fully utilized and given due effect to challenge such an action which appears to be in the nature of a strike suit or otherwise lacks apparent merit * * * [plaintiffs] are bound to bear in mind that matters depending on business judgment are not actionable. (Cf. Steinberg v Carey, 285 App Div 1131.) They are required to set forth something more than vague general charges of wrongdoing; their charges must be supported by factual assertions of specific wrongdoing; conclusory allegations of breaches of fiduciary duty are not enough.”
In this case it clearly appears that the plaintiffs have failed as a matter of law to make out an actionable claim. Accordingly, the motion by the defendants for summary judgment and dismissal of the complaint is granted.