529 F.Supp. 86 (1981)
Thomas BIRMINGHAM and Anthony J. Morano, Plaintiffs,
v.
SOGEN-SWISS INTERNATIONAL CORPORATION RETIREMENT PLAN, George J. Helwig, Hans P. Offenborn, Gerd Schaeffer, United States Trust Company of New York and Sogen-Swiss International Corporation, Defendants.
No. 80 Civ. 4018 (RLC).
United States District Court, S. D. New York.
September 21, 1981.
*87 Garrell, Siegal & Katz, New York City, for plaintiffs; Gilbert Siegal, New York City, of counsel.
Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendants Sogen-Swiss Intern. Corp. Retirement Plan, George J. Helwig, Hans P. Offenborn, Gerd Schaeffer, Sogen-Swiss Intern. Corp., Matthew Gluck, William G. McGuinness, New York City, of counsel.
Carter, Ledyard & Milburn, New York City, for defendant United States Trust Co. of New York.

OPINION
ROBERT L. CARTER, District Judge.
Plaintiffs Thomas Birmingham and Anthony J. Morano have brought this "ERISA" action pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331 to recover $68,840.00 and $6,051.00 respectively, these sums representing the difference in final lump sum pension benefit payments due plaintiffs, depending upon which of two methods of calculating the payments is utilized. Plaintiffs and defendants have cross-moved for summary judgment in accordance with Rule 56, F.R.Civ.P., and both sides agree[1] that there are no outstanding unresolved factual issues to prevent final disposition of the case on the pleadings, documents and affidavits submitted.
Sogen-Swiss International Corporation ("Sogen-Swiss") was formed in 1973 by a merger of Swiss and French investment groups. Late in 1977 there was a falling out between the two groups, as a result of which the Swiss faction bought out its French counterpart and merged the corporation into the Swiss-dominated successor corporation, Swiss American Securities, Inc. The merger and termination were effectuated on April 11, 1979, at which time all employees of Sogen-Swiss International Corporation were discharged. Those employees oriented toward the Swiss faction were promptly hired by the successor corporation. However, plaintiffs, being aligned toward the French, were not rehired.[2]
The Sogen-Swiss International Retirement Plan ("the Plan"), under which plaintiffs' claims are made, was also terminated on April 11, 1979. It is undisputed that plaintiffs are entitled to lump sum payment accrued pension benefits under the Plan. At issue is the manner of calculating those benefits.
Prior to April 11, 1979, the Plan was administered by a retirement committee *88 ("the old committee") composed of four Sogen-Swiss employees, including plaintiff Birmingham. This committee had the authority to administer the Plan, "subject at all times to the limitations and conditions provided for in the Plan." Article 11 of the Plan specifically reserved the power to amend the Plan solely to the Sogen-Swiss Board of Directors. Nevertheless, the old committee was charged in the first instance with the task of administering the Plan's termination. The wording of the Plan did not specifically provide for what would happen in the event of the Plan's termination, other than to say that "all benefits accrued to the Discontinuance Date to the extent then funded, are non-forfeitable for Members, retired Members and their beneficiaries," § 12.1 of the Plan, and "the foregoing allocation shall be made as determined by the Board of Directors on the basis of actuarial valuations." § 12.3 of the Plan.[3]
Shortly before and in anticipation of the Plan's termination, members of the old committee and Mayer Siegel, attorney for the Swiss faction and successor corporation, began communicating with the actuarial firm of Towers, Perrin, Foster & Crosby ("TPF&C," "the actuaries") which traditionally had advised the committee on financial matters. The actuaries advised all parties that two interpretations of the Plan were possible with regard to the age from which actuarial reduction would occur, and further, that two different actuarial bases could be employed  the 5½ percent/ 1971 TPF&C Table and the Pension Benefit Guarantee Corporation ("PBGC") Basis. See April 6, 1969 letter from Douglas F. Downard, TPF&C Consultant, to Mayer Siegel.
In provisions not specifically relating to its termination, the Plan provided employees with two retirement options  the normal retirement pension which could be received at age 65 (§ 4.1 of the Plan) and the early retirement pension which could be received at age 55, assuming the employee had completed five years of service for the company and would have completed fifteen years service at his normal retirement date (§§ 4.2, 4.3 of the Plan). The actuaries stated that in calculating lump sum payments upon the Plan's termination, the retirement committee could either require all employees to take an amount equivalent to the normal retirement pension actuarially reduced from age 65 ("Interpretation One"), or they could give employees who had completed five years of service and would have completed fifteen years service at the normal retirement date the option of receiving the early retirement pension actuarially reduced from age 55 ("Interpretation Two"). The latter interpretation stood to benefit most employees under the age of 55. The successor corporation, which stood to receive the remainder of unexpended funds from the Plan, favored Interpretation One.
Defendants now maintain that Interpretation One and the PBGC Basis are correct. Plaintiffs contend that in light of the actions of the old retirement committee and the Sogen-Swiss Board of Directors, Interpretation Two and the 5½ percent TPF&C Basis are correct. Plaintiff Birmingham, who was 53 when the Plan terminated, was paid $26,139.00 (although he contends that a proper application of defendants' preferred formula would have accorded him $28,074.00) and maintains that using Interpretation Two and the 5½ percent TPF&C Basis, he would be entitled to $94,979.00. Morano, who was 37 when the Plan terminated, contends that he is entitled to an additional $6,051.00 based on analogous calculations.
On April 9, 1979, the original retirement committee ("the old committee") met after receiving reports from the accountants and voted unanimously with one abstention to accept Interpretation Two and the 5½ percent TPF&C Basis. Two of the three committee members voting were under 55 and stood to gain personally as a result of the *89 outcome. Mayer Siegal, who had encouraged the committee to vote differently, objected that its choice of interpretation was incorrect as a matter of law. On April 11, the Sogen-Swiss Board of Directors met formally for the last time to disband the corporation and terminate the Plan. At the meeting objections to the legality of the committee's actions were discussed. After the chairman ordered the recommendations of the committee be recorded in the Minutes, the Board adopted a resolution terminating the Plan and appointing a new retirement committee composed of two Swiss-American Securities employees and one Swiss-oriented member of Sogen-Swiss who would shortly join Swiss-American Securities ("the new committee"). The resolution specified that the new committee's task was to take such action as shall be necessary to insure approval of the Retirement Plan by the Pension Benefit Guaranty Corporation and the Internal Revenue Service.[4] On May 8, 1979, the new committee, which was nominally called the "Sogen-Swiss International Corporation Retirement Plan," but was in fact an entity of the successor corporation, (see letter of Hans P. Offenborn to Anthony Morano dated April 25, 1980), passed a resolution revoking the April 9 resolution of the old committee and enacting defendants' interpretation of how lump sum payments should be calculated.[5] Plaintiffs initiated this action to recover the amounts denied to them as a result of the new committee's resolution.

Determination
Plaintiffs have presented ten canons of construction favoring their interpretation *90 over defendants'. Most of these, however, are beside the mark. The court's task is not to determine which of the two interpretations it favors in the abstract, but rather to decide whether the old committee was authorized to make the decision contained in its April 9 resolution, and if not so authorized at the time, whether the committee's selection of Interpretation Two and the 5-½ percent TPF&C Basis was subsequently adopted and ratified by the appropriate authorities notwithstanding the lack of prior authorization. The court must also determine whether the new committee was authorized to take its action revoking the resolution of the old committee. Both sides agree that the Sogen-Swiss Board of Directors constituted the highest authority in regard to the Sogen-Swiss Retirement Plan. The minutes of the Board's April 11 meeting are thus of critical importance.
Defendants argue that the old committee's April 9 decision was null and void ab initio because it was beyond the committee's powers and incorrect as a matter of law. Defendants' ultra vires argument has two prongs. First they maintain that the plain wording of the Plan unambiguously favored Interpretation One over Interpretation Two, hence the old committee's decision was really an amendment to the Plan rather than an interpretation made in the course of administering the Plan. Defendants rely on language in the Plan stating that early retirement benefits will be available only to employees having reached the age of 55. Therefore, defendants argue, employees under 55 at the time of the Plan's termination must have their benefits actuarially reduced from age 65. However, it could just as well be argued that only employees having reached the age of 65 would be eligible for normal retirement benefits. The ambiguity stems from the fact that Section 12.1 contradicts the eligibility requirements for both early and normal retirement by stating that upon termination of the Plan "all benefits accrued to the Discontinuance Date to the extent then funded, are non-forfeitable." Neither Section 12.1 nor any other section specifies the rate of accrual. Since it is plausible that accrual could be based on a projected early retirement or on a projected normal retirement, both the actuaries and the old committee were correct in noting that two interpretations were possible. The minutes of the Board of Directors' April 11 meeting refer to "two alternative views," and make no mention of any amendment that would require ratification.
Defendants' second ultra vires argument is based upon Section 10.7 of the Plan which disqualifies a committee member from acting upon or influencing "a decision of the Committee specifically relating to his own participation under this Plan." Despite the fact that two of the three voting committee members stood to gain from the vote, the committee's decision did not relate specifically to these members; it related to them incidentally as members of the larger class of employees under 55. If Section 10.7 were interpreted broadly to prohibit committee members from voting on general rules which affected them incidentally, then the committee would likely confront situations where no employee was eligible to vote on a matter of general concern to all employees. If Section 10.7 had been intended to be so broad, it would have contained language such as for example, "in any way affect the interest of ..." rather than "relate specifically to..." In addition, it is unclear how disqualification of two committee members would have affected the result, given the unanimity of the committee's action.
Ultimately, it is the Board of Directors' response to the committee's recommendations that must govern. Even if the old committee's action had been ultra vires, it could become validated via ratification by the Board. See, e.g., Galef v. Alexander, 615 F.2d 51, 57 (2d Cir. 1980) (directors entrusted with management of corporation); 2 Fletcher, Cyclopedia of the Law of Corporations, § 505 (perm. ed. 1969); Amdur v. Meyer, 15 A.2d 425, 224 N.Y.S.2d 440, 443 (3d Dept. 1962). Conversely, valid decisions by the committee could be nullified by the Board's repudiation, id., especially since Section 12.3 of the Plan accords the power *91 to allocate benefits on termination of the Plan to the Board. The new committee's revocation of the old committee's resolution would have been proper only if the Sogen-Swiss Board of Directors had disavowed or unequivocally refused to adopt the old committee's recommendations and specifically empowered the new committee to recalculate benefits as it saw fit. The April 11 minutes make clear, however, that the Board did no such thing.
The new committee was given a limited mandate to insure that the proposed method of termination was not legally infirm and to alter the old committee's recommendations only insofar as necessary to overcome any infirmities. The Board resolution specified that:
The Retirement Committee shall file with the Pension Benefit Guaranty Corporation such information and shall take such further action as shall be necessary to obtain a Certificate of Sufficiency and approval of the method of distribution of Plan assets.
The Retirement Committee shall file an application with the Internal Revenue Service and shall take such further action as shall be necessary to obtain a determination that the proposed termination of the SoGen-Swiss International Corporation Retirement Plan does not adversely affect its qualified status.
(Minutes of the April 11 meeting, page 6) (emphasis added). Since these provisions were preceded by the clause, "WHEREAS, it is desired to terminate to the Sogen-Swiss International Corporation Retirement Plan effective as of April 11, 1979," the phrase "proposed termination" must have referred to a proposal in existence on April 11. At that time the only proposal before the Board was the old committee's adoption of Interpretation Two and the 5½ percent TPF&C Basis. The new committee's dramatic departure from it was not articulated until May 8.
If the Board of Directors did not itself repudiate and invalidate the old committee's resolution at the April 11 meeting, it certainly would not have authorized the new committee to do so. The Board's primary concern was to ensure that the Plan retained its qualified status with the Internal Revenue Service. One thing that would clearly jeopardize a plan's status is a lowering of accrued benefits or the nonforfeitable percentage of such after benefits had vested and accrued. See Internal Revenue Code §§ 411(a)(10)(A), 412(b)(6)(D), 26 U.S.C. §§ 411(a)(10)(A), 412(b)(6)(D).
The only possibility remaining in defendants' favor is that the Board of Directors provisionally invalidated the old committee's resolution, attaching the condition that its provisional invalidation would take effect only if the new committee discovered that its predecessor's proposed method of termination violated Internal Revenue Service Regulations or requirements set by the Pension Benefit Guaranty Corporation. In short, defendants' argument that the Board of Directors did not ratify the old committee's resolution depends upon the success of their other argument that the resolution was void ab initio because it was incorrect as a matter of law.
On this point, however, defendants have little to say of any persuasive significance. Their one argument is that the old committee's interpretation of the Plan is contradicted by § 401(a)(14) of the Internal Revenue Code, 26 U.S.C. § 401(a)(14).[6]
Plainly, however, this section does not invalidate methods of calculating benefits that are more generous than the minimum it prescribes. Under it a trust is qualified *92 only if the employee receives "a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under the regulations prescribed by the Secretary." (Emphasis added.) Given that the acknowledged purpose of this section is the protection of employees, see McClintock-Trunkey Co. v. C.I.R., 217 F.2d 329 (9th Cir. 1954); U. S. v. Kintner, 216 F.2d 418 (8th Cir. 1954), defendants' argument that the section demands a reduction of pension benefits can be seen to be frivolous.
It may well be that the original retirement committee's interpretation of the Plan is more generous to employees than would be required by either the Internal Revenue Service or the Pension Benefit Guarantee Corporation. It can be argued that such generosity might have provided a basis for rejecting the old committee's interpretation. However, the decision to reject that interpretation on those grounds could be made only by the Sogen-Swiss Board of Directors, not by the successor corporation, and not by the new retirement committee. Rejection on such grounds was not the intent of the Board's April 11 resolution. The new committee acted improperly and without force of law when it revoked the April 9 resolution of the old committee. Accordingly, plaintiffs' motion for summary judgment is granted; defendants' motion for summary judgment is denied. Defendants are ordered to pay to plaintiffs the difference between the amounts owed to them in accordance with the old committee's April 9 resolution and the amounts already tendered, together with appropriate interest.
Both sides have moved for attorneys' fees and costs of litigating this action. Section 502(g) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs and attorneys' fees should be awarded to the prevailing party in the absence of some particular justification for not doing so." Central States Southeast v. Hitchings Trucking, 492 F.Supp. 906, 909 (E.D.Mich.1980); cf. Fase v. Seafarers Welfare and Pension Plan, 589 F.2d 112, 116 (2d Cir. 1978) ("An altogether sufficient support for the court's decision not to award attorney's fees under ERISA is that the attorney obtained no relief under that statute."); Pollock v. Castrovinci, 476 F.Supp. 606, 618 (S.D.N.Y.1979) (Goettel, J.) ("considering that the actions of the defendants were not in all respects proper, and particularly considering the fact that they did not candidly set before the federal agencies the true nature of the problem, ... it does not appear that defendants' counsel should be awarded fees in this action."), aff'd, 622 F.2d 575 (2d Cir. 1980).
Plaintiffs' attorney's labors in prosecuting this action have been substantial. Defendants can probably afford the expenses involved, see Baeten v. Van Ess, 474 F.Supp. 1324 (E.D.Wis.1979), and in general there appears no reason why fees should not be awarded. Accordingly, defendants are ordered to pay costs of the action to plaintiffs together with reasonable attorney's fees, the amount to be determined upon submission of appropriate papers.
IT IS SO ORDERED.
NOTES
[1] Defendants' caveat to this agreement is that if the court determines the wording of the pension plan to be ambiguous (as we do), then extrinsic evidence should be submitted in deciding which is the more appropriate interpretation. However, for reasons which will become clear in the opinion, we do not base our decision on the relative appropriateness of competing interpretations, but rather on extent of the authority of committees putting forward divergent interpretations. On this point the documents speak for themselves, and no extrinsic evidence is needed.
[2] Birmingham's employment with Sogen-Swiss terminated on April 11, 1979. Morano had been transferred to the French-dominated Hudson Securities, Inc. on August 20, 1978, although he remained a participant in the Sogen-Swiss Pension Plan until its termination on April 11.
[3] Article 12 also provided a system of prioritizing different types of claims under the Plan. That system is not at issue in this case.
[4] Reprinted in full the resolution reads:

WHEREAS, Section 10.1 of the SoGen-Swiss International Corporation Retirement Plan empowers the Board to appoint a Retirement Committee to administer the Plan, and
WHEREAS, it is desired to reconstitute the membership of said Committee,
NOW, THEREFORE, be it
RESOLVED, that effective April 12, 1979, the Retirement Committee shall be constituted as follows:
 George Helwig
 Hans Offenborn
 Gerd E. Schaeffer
WHEREAS, it is desired to terminate the SoGen Swiss International Corporation Retirement Plan effective as of April 11, 1979, and
WHEREAS, it is desired to obtain the approval of the Internal Revenue Service and the Pension Benefit Guaranty Corporation with regard to the determination and distribution of the participants' accrued pension incident to the termination of the Plan,
NOW, THEREFORE, be it
RESOLVED, that:
1. The SoGen-Swiss International Corporation Retirement Plan is terminated as of April 11, 1979 (the "Termination Date").
No participant shall accrue any additional benefits after the Termination Date and no employee may become a participant in the Plan after the Termination Date.
2. The Retirement Committee shall file with the Pension Benefit Guaranty Corporation such information and shall take such further action as shall be necessary to obtain a Certificate of Sufficiency and approval of the method of distribution of Plan assets.
3. The Retirement Committee shall file an application with the Internal Revenue Service and shall take such further action as shall be necessary to obtain a determination that the proposed termination of the SoGen-Swiss International Corporation Retirement Plan does not adversely affect its qualified status.
4. Upon receipt of a Certificate of Sufficiency from the Pension Benefit Guaranty Corporation and a favorable determination from the Internal Revenue Service, the Retirement Committee as reconstituted shall (a) cause to be distributed to each participant in cash a lump sum equal to his accrued pension, or (b) purchase an annuity contract from a life insurance company providing each participant an annuity in an amount equal to his accrued pension, or (c) provide to each participant a choice of cash or annuity. Any Plan assets remaining after the satisfaction of all liabilities to participants and beneficiaries in the foregoing manner shall revert to Swiss American Securities Inc. into which the Corporation shall have been merged.
5. The Retirement Committee shall take such further action as may be necessary or desirable to implement the intent of the above Resolution.
[5] The resolution read as follows:

RESOLVED, that the resolution adopted by the Pension Committee on April 9, 1979 to apply "Interpretation # 2 as outlined in the TPF&C Discussion Draft" of April 9, 1979 is revoked. Instead, Interpretation # 1 as outlined in that Discussion Draft will be followed. Therefore, accrued benefits of those participants who have completed five years of service, but who have not attained age 55 on April 11, 1979 will be based upon the retirement pensions which they are entitled to receive at age 65, discounted to April 11, 1979.
[6] In pertinent part the subsection reads:

In the case of a plan which provides for the payment of an early retirement benefit, a trust forming a part of such plan shall not constitute a qualified trust under this section unless a participant who satisfied the service requirements for such early retirement benefit, but separated from service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary.