409 A.2d 377

**AMERICAN BANK AND TRUST COMPANY OF PENNSYLVANIA, Executor of the Estate of Ray E. Lied, Deceased, Appellee,**

v.

**June G. LIED, Executrix of the Estate of Eugene R. Lied, Deceased, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 10, 1979.

Decided Dec. 21, 1979.

334

James D. Crawford, Lawrence E. Stengel, Philadelphia, for appellant.

Lawrence J. Ruggiano, George J. Morgan, Lancaster, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

LARSEN, Justice.

Prior to October 3, 1960, Ray E. Lied and his son, Eugene R. Lied, conducted a partnership known as "Ray E. Lied & Son." On or about October 3, 1960, Ray and Eugene Lied organized a closely-held corporation, "Ray E. Lied & Son, Inc." to which was transferred most of the property, assets, business and good will of the partnership. The only stockholders were Ray and Eugene Lied, each holding 500 shares.

A stock purchase agreement was executed on October 20, 1960 between the stockholders. This agreement provides:

WHEREAS, the Stockholders desire to promote their mutual interests and the interest of the corporation by imposing certain restrictions and obligations on themselves, the corporation and on the shares of stock of the corporation:

NOW THEREFORE, in consideration of the mutual promises covenants and agreements of the parties hereto, it is mutually agreed:

\* \* \* \* \* \*

4. Purchase Upon Death: Upon the death of a stockholder all the shares of the stock of the corporation owned by the deceased stockholder and to which he or his personal representative shall be entitled shall be sold and purchased as herein provided.

(a) Obligation of Corporation: The corporation shall purchase from the decedent's personal representative and the decedent's personal representative shall sell all the shares of the stock of the corporation owned by the decedent and to which the decedent or his personal representative shall be entitled at the price determined in accordance with Paragraph 2. Settlement shall be made

not more than sixty days following the date of the qualification of the personal representative.

(b) Insurance: If the corporation shall receive any proceeds of any policy on the life of the decedent, such proceeds shall be paid by the corporation to the decedent's personal representative to the extent of the purchase price of the decedent's stock and such payment shall be deemed on account of such purchase price.

(c) Use of Surplus: If at the time the corporation is required to make payment of the purchase price for the stock of a deceased stockholder, its surplus, including the proceeds of any life insurance policy is insufficient for such purpose, (1) the entire available surplus shall be used to purchase part of the stock of the deceased stockholder, and (2) the corporation and the stockholders shall promptly take all required action to reduce the capital stock of the corporation to the extent necessary for the redemption of the unpurchased stock. If the corporation shall, nevertheless, be unable to or refuse to purchase all of the decedent's stock, the obligation of the corporation with respect to the shares which the corporation shall be unable or refuse to purchase shall be deemed assumed by the surviving stockholders.

(d) Dissolution: If all the stock of the deceased stockholders is not purchased or redeemed and payment made therefore in accordance with the foregoing provisions, then the stockholders shall within ninety days after qualification of such personal representative vote in favor of the immediate dissolution of the corporation and file an appropriate certificate of dissolution and thereafter the stockholders shall take all other necessary action to liquidate the corporation and such dissolution and liquidation shall be undertaken by them with all reasonable speed and distribution of the assets shall be made as promptly as possible.

\* \* \* \* \* \*

(9) Benefit: This agreement shall be binding upon the parties, their heirs, legal representatives, successors and assigns. . . .

Eugene Lied died on January 6, 1974. The surviving stockholder, Ray Lied, died nine days later on January 15, 1974. Appellee, the executor of the estate of Ray Lied, attempted to exercise the right and obligation of the corporation, and of Ray Lied, to purchase the stocks that had been held by Eugene Lied from his (Eugene's) estate. The executrix of Eugene Lied's estate, appellant herein, refused to sell the stock. Appellee then filed a Petition for Specific Performance of the Stock Purchase Agreement requesting the Orphans' Court Division, Court of Common Pleas of Lancaster County, to order appellant to sell the 500 shares of stock held by Eugene Lied to the corporation at the price provided in the stock purchase agreement.[1]

A hearing was held on the petition on June 20, 1975, before the Honorable Anthony R. Appel. That court held that the stock purchase agreement obligated the corporation to purchase Eugene Lied's stock from his estate. Consequently, the court directed the specific performance requested. The purchase price of $133,904.00 was established by the agreement (paragraph 2) at book value at the close of the fiscal year preceding the date of the death of the stockholder. The estate of Ray Lied, as the sole stockholder of the corporation, would, if the decree for specific performance is upheld, be entitled to all of the corporation's property and assets valued at approximately $540,000.00. It is the discrepancy in the amounts the estates of the two stockholders will respectively receive from the corporation which prompts the present challenge to the decree for specific performance.

Appellant filed exceptions to the orphans' court decree. The exceptions were denied and this direct appeal was taken from that denial.

1. This action was brought pursuant to the Probate, Estates and Fiduciaries Code, 20 Pa.C.S. § 3390 (1975) which provides: "If any person makes a legally binding agreement to purchase or sell . . . personal estate and dies before its consummation, his personal representative shall have power to consummate it, but if he does not do so, the court, on the *application of any party in interest* . . . in its discretion, may order specific performance of the agreement if it would have been enforced specifically had the decedent not died."

■ Appellant contends enforcement of the stock purchase agreement would frustrate its purpose. She argues the death of the surviving stockholder, Ray Lied, nine days after the death of Eugene Lied prevented the accomplishment of the objective of the agreement which, she maintains, was to preserve the management and control of the corporation in the survivor of the two original stockholders; the fortunes of the corporation would thus rise or fall on the strength or weakness of the survivor, and his estate would benefit or suffer accordingly.

The orphans' court was not persuaded by this argument, nor are we. The stock purchase agreement was, ostensibly, designed to retain management and control of the corporation in the survivor and to insulate the corporation from interference from outsiders *for the life of the survivor*; but this retention of control was obviously not intended to last forever as the parties were acutely aware that the survivor would also someday die.

The stockholders realized that either of them might be the first to die. They, therefore, drafted an agreement whereby the estate of the first to die would receive a sum certain fixed upon his death while the second (and his estate) would realize the gains *or losses* accruing to the corporation after the first stockholder died. *See Brown Estate*, 446 Pa. 401, 409, 289 A.2d 77, 89 (1972). This agreement was enforceable by the survivor if the corporation was unable or refused to enforce it, and that obligation was made binding on the "heirs, legal representatives, successors and assigns."

Had Ray Lied outlived his son by 10 years, 10 months or 10 minutes after he had purchased the stock from the estate of Eugene Lied, appellant could voice no arguable complaint that Ray Lied's estate received the benefit contemplated by the agreement. While the interval between the deaths of the stockholders may have been shorter than anticipated, the natural result of the operation of the agreement—the estate of the first to die receives the price determined in the

contract; the estate of the second realizes any gains or losses of the corporation—*was* anticipated. Thus, th'e specific enforcement of the stock purchase agreement did not frustrate its purpose.[2]

Appellant also argues that the orphans' court erred in excluding certain testimony on the basis of the parol evidence rule. At the hearing on the petition for specific performance, appellant sought to introduce the testimony of one Donfred Nussbaum, accountant for the corporation, to explain the asserted "ambiguity" in the agreement caused by the unforeseen occurrence of the death of the surviving stockholder prior to exercise of the buy-sell provisions. This witness would have testified as to oral declarations concerning the stock purchase agreement which were made by Ray Lied subsequent to his son's death. Appellee objected to such testimony as violative of the parol evidence rule and the court sustained the objection.

The usual formulation of the parol evidence rule forbids the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purpose of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement. Corbin on Contracts, § 573; *Boyd Estate*, 394 Pa. 225, 146 A.2d 816 (1958).

In considering the offer of proof in the case at bar, it is clear that the testimony of Donfred Nussbaum should not have been excluded on the basis of the parol evidence rule. The testimony was not offered to demonstrate an oral modification or amendment of the stock purchase agreement nor, contrary to what appellant now contends in her brief, to demonstrate the intent of the parties with regard to the events which gave rise to the "ambiguity." The offer of

2. The "frustration of purpose" cases cited by appellant, *Moving Picture Co. v. Scottish Union & National Insurance Co.*, 244 Pa. 358, 90 A. 642 (1914) and *Alvino v. Carraccio*, 400 Pa. 477, 162 A.2d 358 (1960) are inapposite as those cases involve contracts which were impossible to perform because the subject matter of the contracts were destroyed.

proof indicated Nussbaum's testimony would show only that Ray Lied had "indicated, *informally* that he did not intend to exercise his options" under the stock purchase agreement. Notes of Testimony, June 20, 1975, at 38 and 41. Thus the testimony was not offered to alter or vary the terms of the agreement, nor to explain any possible ambiguity, but merely to show the intention of one of the parties not to exercise his existing contract rights. As it would not, therefore, have violated the parol evidence rule, it is clear the court erred in excluding the testimony on that basis.

■ However, it is equally clear that the oral declarations were irrelevant, immaterial and could have in no way affected the orphans' court's conclusion. Ray Lied's informal declarations of an intention not to enforce the stock purchase agreement were, at best, gratuitous "promises" totally lacking any consideration that might make such "promises" enforceable against Ray Lied. Since the "promise" was unenforceable against him, it was similarly unenforceable against his estate and could not be successfully asserted as a defense in the present action for specific performance. Accordingly, it was not error to exclude the testimony of Donfred Nussbaum on this basis.[3]

■ Appellant next argues the dissolution clause of paragraph 4(d) of the agreement requires dissolution of the corporation, and equal distribution of its assets to the two estates, instead of specific enforcement of the buy-sell provisions. This contention is without merit. The dissolution clause was applicable if "the stock of the deceased stockholders is not purchased or redeemed and payment made, therefore, in accordance with the foregoing provisions . . . ." Appellee attempted to purchase the stocks in accordance with the foregoing provisions of the agreement, but was thwarted by the refusal of appellant to sell the stock that

---

3. In fact, testimony regarding the oral declarations of Ray Lied which Nussbaum would have testified to was admitted by another source, Harold Gibbs. Gibbs was present at the meeting at which Ray Lied made the declarations. Gibbs' testimony was entirely consistent with the offer of proof, Notes of Testimony, June 20, 1975, at 55, and served only to indicate that Ray Lied might not have exercised his contract rights under the stock purchase agreement.

had been owned by Eugene Lied. The parties could not have intended the dissolution clause to be triggered by the unilateral refusal by the estate of the deceased stockholder to comply with the specific mandates of paragraphs 4(a), (c) and 9 of the agreement.

Appellant's final contention is a highly imaginative but wholly frivolous one. She argues that the decree for specific performance is tantamount in this case to the orphans' court casting the deciding vote to "break the deadlock" between the corporate directors, which that court has no authority to do. The deadlock existed because the directors, who included appellant, would not agree to purchase the stock from the estate of Eugene Lied. The orphans' court decree merely enforced a private agreement and the obligation of the surviving stockholder to purchase the stock of the decedent if the corporation was unable or refused to do so. It did not, as appellant dramatically phrases that court's action, "break the deadlock by casting the deciding vote."

For the foregoing reasons, the decree of orphans' court directing specific performance of the stock purchase agreement is affirmed. Decree affirmed. Costs on Appellant.

MANDERINO, J., did not participate in the decision of this case.