Hɪʟᴅᴀ Aʀᴏɴᴏꜰꜰ et al., Appellants, v Jᴏʜɴ Aʟʙᴀɴᴇꜱᴇ et al., Respondents, et al., Defendant.

Second Department, January 29, 1982

APPEARANCES OF COUNSEL

*Bartels, Pykett & Aronwald* (*John R. Bartels, Jr.,* of counsel), for appellants.

*Milgrim Thomajan Jacobs & Lee, P. C.* (*Robert F. Fink* and *Robert A. Meister* of counsel), for respondents.

OPINION OF THE COURT

*Per Curiam.*

Plaintiffs, stockholders of defendant Hospital Building Corporation (HBC), commenced this derivative action to recover lost profits of HBC as a result of certain transactions with the individual defendants, who are directors of HBC and also partners of Pelham Bay General Hospital (PBGH) which leases a hospital from HBC. The first transaction involved the rent paid by PBGH to HBC. The rent was $30,000 monthly from 1962 until January, 1975 when it was increased to $36,000 per month. In July, 1976 the monthly rent was reduced to $20,000 due to PBGH's cash

flow problems (caused by delay in Medicare reimburse-ment). In May, 1977 the rent was increased to $30,000 per month. The 10 months of reduced rent caused a loss of $160,000 to HBC. The other transactions which are the subject of objection by the shareholders include the pur-chase, with HBC funds, of certain permanent and semiper-manent equipment for the hospital totaling approximately $600,000, and the installation of an intensive care unit (replacing its obstetrics unit) and a central air-condition-ing system in 1976-1977, which unit and air-conditioning system cost $214,000. While the leases prior to 1975 were silent on the matter, a 1975 lease modification provided that the landlord would be responsible for major repairs or replacements of installed chattels, fixtures and equipment for a complete hospital. In 1977, a further modification provided that the purchase of additional chattels, fixtures and equipment would be accompanied by a corresponding net increase in rent.

To all of this, the individual defendants asserted the defense of ratification on the basis that a majority of HBC stockholders, at a December 15, 1977 meeting, approved the mentioned transactions. Subsequently, Special Term granted said defendants' motion for summary judgment dismissing the complaint and plaintiffs have appealed.

The issue on appeal is whether the questioned transac-tions can be effectively ratified by the stockholders — that is, whether they are void or merely voidable. The courts have drawn a distinction between transactions which are only voidable at the option of the corporation and transac-tions which are void. Voidable transactions can be ratified by a majority vote of the stockholders, but a void act is not subject to ratification (*Quintal v Kellner,* 264 NY 32; *Pollitz v Wabash R.R. Co.,* 207 NY 113; *Continental Securities Co. v Belmont,* 206 NY 7). Further, it is settled law that waste or a gift of corporate assets are void acts and cannot be ratified by a majority of stockholders (*Meredith v Camp Hill Estates,* 77 AD2d 649; see *Diamond v Davis,* 38 NYS2d 103, affd 265 App Div 919, affd 292 NY 552; see, also, *Selman v Allen,* 121 NYS2d 142; 2 Fletcher, Cyclopedia of Corporations [Permanent ed], § 764). The rationale for the rule is that "[a]n unconscionable deal between directors

personally and the corporation they represent could not become conscionable merely because most of the stockholders were either indifferent or actually in sympathy with the directors' scheme" (*Gottlieb v Heyden Chem. Corp.*, 33 Del Ch 82, 91).

The essence of a claim of gift is lack of consideration and the essence of waste is the diversion of corporate assets for improper or unnecessary purposes (*Michelson v Duncan*, 407 A2d 211, 217 [Del]). In *Amdur v Meyer* (15 AD2d 425, 430), the court held that certain stock options were not a gift, since "the corporation might reasonably expect benefit to flow to the corporation." Also, a clearly inadequate consideration invokes the same principles as the absence of consideration (see *Gottlieb v McKee*, 34 Del Ch 537). In *Pollitz v Wabash R.R. Co.* (207 NY 113, *supra*), the director improperly applied assets to his own use (through issuance of stock without consideration). Other examples of unratifiable acts include the use of corporate funds to discharge personal obligations (*Quintal v Kellner*, 264 NY 32, *supra*), distribution of surplus earnings under guise of additional salaries to directors and officers (*Godley v Crandall & Godley Co.*, 212 NY 121), transfer of assets without consideration (*Meredith v Camp Hill Estates*, 77 AD2d 649, *supra*), use of corporate property given to a foreign corporation without consideration (*Boaz v Sterlingworth Ry. Supply Co.*, 68 App Div 1), payment of a false claim (*Continental Securities Co. v Belmont*, 206 NY 7, *supra*), and payment of excessive investment fees to directors (*Saxe v Brady*, 40 Del Ch 474). The directors would be liable for every form of waste of assets regardless of whether it was intentional or negligent (see *Rapoport v Schneider*, 29 NY2d 396).

The existence of benefit to the corporation, in turn, is generally committed to the sound business judgment of the directors (see *Auerbach v Bennett*, 47 NY2d 619; *Amdur v Meyer*, 15 AD2d 425, *supra*; *Cohen v Ayers*, 596 F2d 733 [CA7th, applying New York law]). The objecting stockholder must demonstrate that no person of ordinary sound business judgment would say that the corporation received fair benefit (*Cohen v Ayers, supra; Michelson v Duncan*, 407 A2d 211, 224 [Del], *supra*). If ordinary businessmen

might differ on the sufficiency of consideration received by the corporation, the courts will uphold the transaction (see *Saxe v Brady, supra*). The motives or personal benefit to the directors is also a relevant concern. The objecting stockholders must show that the directors must have acted with an intent to serve some outside interest, regardless of the consequence (see *Gamble v Queens County Water Co.*, 123 NY 91). If there is a great disparity in values between the assets expended and the benefits received, the courts will infer that the directors are guilty of improper motives, or at least recklessly indifferent to the stockholders' interests (see *Alcott v Hyman*, 42 Del Ch 233).

The determination of whether or not there has been a gift of corporate assets is largely a question of fact (see *Gottlieb v McKee*, 34 Del Ch 537, *supra*). The existence of ratification makes the objecting stockholders' burden more difficult since ratification shifts the burden of proof to the opponents of the transactions (see *Cohen v Ayers*, 596 F2d 733, *supra; Kerbs v California Eastern Airways*, 33 Del Ch 69). On the other hand, compliance with section 713 of the Business Corporation Law does not automatically validate any transaction (see *Rapoport v Schneider*, 29 NY2d 396, *supra; Remillard Brick Co. v Remillard-Dandini Co.*, 109 Cal App 2d 405 [section 713 of the Business Corporation Law is derived from former section 820 of the California General Corporations Law]; see, also, 76 Col L Rev 1156; 41 Fordham L Rev 639).

Turning to the instant case, although plaintiffs never alleged "gift" or "waste" in their complaint, the omission does not bar a consideration of the gift or waste claims. Under liberal rules of pleading, plaintiffs' assertions of unreasonable transactions — which benefited the individual defendants personally — should be sufficient to put them on notice of plaintiffs' theory (see CPLR 3013; *Foley v D'Agostino*, 21 AD2d 60; Siegel, New York Practice, § 208). "A claimant need not necessarily expressly aver 'gift' or 'waste' in order to make out a claim on these theories [s]o long as claimant alleges facts in his description of a series of events from which a gift or waste may reasonably be inferred" (*Michelson v Duncan*, 407 A2d 211, 217 [Del], *supra*). Since the complaint gives sufficient

notice of the events out of which plaintiffs' grievances arise, it can be construed as relying on a theory of "gift", a transaction which cannot be ratified by a majority of the stockholders. Thus, Special Term erroneously concluded that plaintiffs did not raise the theory.

While the individual defendants may ultimately prevail after trial, it cannot be said, as a matter of law, that a person of ordinary business judgment would say that HBC received fair consideration. On the rent reduction claim, the individual defendants allege that the cash flow problems of PBGH were to blame. In addition, there is a factual issue as to whether the purchase of hospital equipment with HBC funds benefited the corporation and the argument of the individual defendants that the purchases were necessary for the future of the hospital merely makes the question a factual issue for determination at trial. Furthermore, the purchase apparently violated the lease because the lease did not obligate HBC to buy equipment. Once the lease was modified to provide for such purchases, with a corresponding rent increase, the lease apparently was violated again, since no increase in rent was given. In this particular case, the ratification of actions by the majority of stockholders of HBC, together with the then existing financial condition of PBGH, emphasize that any benefit to HBC is a triable issue of fact. Finally, plaintiffs should be given the opportunity to obtain additional information through discovery since the facts are particularly within the knowlege of the individual defendants (see *Limmer v Medallion Group,* 75 AD2d 299).

In sum, plaintiffs have demonstrated factual issues with respect to the alleged void acts constituting gift and waste so as to defeat summary judgment.

DAMIANI, J.P., LAZER, COHALAN and BRACKEN, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered November 28, 1980, reversed, on the law, with $50 costs and disbursements, and motion for summary judgment denied.