14-3447-cv
Alphonse Hotel Corporation v. Tran

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2015

(Submitted:  November 4, 2015          Decided: July 11, 2016)

Docket No. 14-3447-cv

_____

ALPHONSE HOTEL CORPORATION,

*Plaintiff-Counter-Defendant-Appellee,*

- v. -

NAM T. TRAN,

*Defendant-Counter-Claimant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

        HALL and LYNCH, *Circuit Judges*, RAKOFF, *District Judge*.[*]

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*) granting plaintiff Alphonse Hotel Corporation's ("AHC") motion for partial summary judgment seeking a declaratory judgment that a lease and a purported joint venture agreement between plaintiff and defendant Nam Tran were invalid and unenforceable.  The district court also denied defendant's request for additional discovery.  We

---

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

consider (1) whether Nam's requests for additional discovery in his Rule 56(d) motion identified specific materials in AHC's possession that were sufficiently germane to the case and not cumulative such that the district court abused its discretion in denying that motion for production; (2) whether under New York law a lease between the parties, which was executed by defendant's father in his former capacity as president of AHC, is void as a gift or corporate waste; and (3) if the lease is void, whether under Pennsylvania law the integration clause contained in the lease survives such that a separate prior-in-time oral agreement to enter a joint venture is voided by that clause.

AFFIRMED.

KEVIN L. SMITH, DAVID A. SIFRE, Stroock & Stroock & Lavan LLP, New York, NY, *for Plaintiff-Counter-Defendant-Appellee Alphonse Hotel Corporation.*

GEORGE BOCHETTO, ALBERT M. BELMONT, DAVID P. HEIM, Bochetto and Lentz, PC, Philadelphia, PA, *for Defendant-Counter-Claimant-Appellant Nam T. Tran.*

HALL, *Circuit Judge*:

This case concerns a lease ("the Lease") and a purported joint venture agreement ("the Joint Venture Agreement") entered into between a son and his father, the now-deceased former president and majority shareholder of a real estate development corporation. The Lease grants the son, defendant-counter-plaintiff-appellant Nam T. Tran ("Nam"), control over a multi-million-dollar property for a period of 20 years in exchange for a payment of $20. The Joint

2

Venture Agreement covers Nam's development of this property. After the father's death, the corporation, plaintiff-counter-defendant-appellee Alphonse Hotel Corporation ("AHC"), under the control of a court-appointed temporary administrator, sought damages for Nam's use and occupancy of the property and a judgment declaring that the Lease and Joint Venture Agreement were void. Nam counterclaimed, seeking a declaratory judgment that those agreements were valid and seeking damages for AHC's breaches of both agreements. The district court granted AHC's motion for partial summary judgment on its declaratory judgment claims and denied Nam's requests for additional discovery. On appeal, we consider: (1) whether Nam's requests for additional discovery in his Rule 56(d) motion identified specific materials in AHC's possession that were sufficiently germane to the case and not cumulative such that the district court abused its discretion in denying that motion for production; (2) whether under New York law the Lease, which was executed by Nam's father in his former capacity as president of AHC, is void as a gift or corporate waste; and (3) if the Lease is void, whether under Pennsylvania law the integration clause contained in the Lease survives such that a separate prior-in-time oral agreement to enter a joint venture is voided by that clause. For the

3

reasons that follow, we affirm the district court's rulings denying Nam's discovery request and granting summary judgment to AHC.

**BACKGROUND**

AHC is a New York closely held corporation that owns and manages real estate, including, among other properties, the former Franklin Chocolate Factory in Philadelphia, PA ("the Property"), which is the subject of this case. Nam, a Pennsylvania citizen, is the eldest son of AHC's former president, Truong Dinh Tran ("Truong"). Upon his death in 2012, Truong owned 80% of AHC's shares, and the four mothers of his children, Sang Kay Nguyen, Hung Nguyen ("Hung"), Cham Nguyen ("Cham"), and Hoa Pham, each owned 5%. Truong served as AHC's president and sole director until September 2008, when he suffered a stroke, at which point he added two seats to the board of directors and appointed two of the mothers, Hung and Cham, to fill those seats. Truong resigned as president in September or October 2010, and Hung was elected president.

Truong died intestate in May 2012; control of AHC and Truong's estate was contested. Shareholders of AHC along with claimants to Truong's estate commenced litigation. The New York State courts overseeing these actions

4

appointed a temporary administrator of the estate, who took control of Truong's 80% share of AHC and, in April 2013, assumed the roles of president and sole director.

Nam alleges that sometime around 2007 he entered into the Joint Venture Agreement with Truong, who was acting on behalf of AHC, to develop the then dilapidated Property into a mixed-use development. Nam submitted no documentary evidence of this agreement, only his own declaration testifying to its existence and a declaration of his wife testifying to actions, purportedly taken in the name of the Joint Venture, toward securing design and regulatory approvals for redevelopment of the Property. According to Nam, under the Joint Venture AHC would provide the capital for redevelopment and pay to maintain the Property, and in exchange Nam and his family would provide the "sweat equity" to design and manage the redeveloped property. As Nam explains in his declaration, AHC facilitated this Joint Venture Agreement by leasing the property to Nam for 20 years, with rights to sublet the property. During the leasehold period, Nam would benefit through receipt of rents and other fees from operation of the redeveloped property, while AHC would benefit by receiving, at the end of 20 years, a higher-value property.

As for the Lease, AHC has no corporate records of it ever being approved, and no copies could be found among the corporation's files. The Lease that has been admitted into evidence is the one that Nam produced when AHC's director asked him about the Property after discovering a record indicating that Nam was the lessee. According to its terms, the Lease is between AHC, as lessor, and Nam, as lessee. Although the parties dispute the effective dates of the Lease and Truong's resignation, and, depending on that timing, whether Truong actually had the authority to execute the Lease on behalf of AHC, the parties agreed for purposes of the summary judgment motion to assume that the signatures were effective.[1]

The Lease provides that Nam will pay AHC a total of $20 in rent for the entire term of 20 years. The Lease states that AHC "will not sell the . . . property during the 20 years term of this Lease." J.A. at 376. The Lease does not mention the Joint Venture Agreement, but contains several provisions relevant to its existence.

First, the Lease contains an integration clause:

---

[1] In its appellate brief, AHC obliquely contests Truong's authority based on the effective dates of his resignation and the Lease, but that issue turns on contested facts and would not be appropriate for disposition on summary judgment. In any event, we need not reach this fact-fraught argument because, as we explain below, we agree with the district court and hold that the Lease is unenforceable as a gift or an act of corporate waste.

6

The Lessor and Lessee hereby agree that this Lease sets forth all the promises, agreements, conditions and understandings between the Lessor . . . and the Lessee relative to the demised premises, and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than as herein set forth, and any subsequent alteration, amendment, change or addition to this Lease shall not be binding upon the Lessor or Lessee unless reduced to writing and signed by them.

J.A. at 380.

Second, the Lease provides that AHC has no obligation to make alterations to the Property:

The Lessor has let the demised premises in their present condition and without any representation on the part of the Lessor, his officers, employees, servants and/or agents. It is understood and agreed that the Lessor is under no duty to make alterations at the time of letting or at any time thereafter.

J.A. at 378.

The Lease also prohibits Nam from leasing the Property, or making any improvements, without the written consent of AHC:

[L]essee covenants and agrees that he will do none of the following things without the consent in writing of lessor: . . . (b) . . . sub-lease the demised premises, or any part thereof, or permit another person . . . to occupy the demised premises, or any part thereof . . . . (d) Make any alternations, improvements, or additions to the demised premises . . . .

J.A. at 378.

7

On October 10, 2013, AHC, through its director, filed an action in the New York Supreme Court seeking both a declaratory judgment that the Lease was invalid and money damages for Nam's use and occupancy of the Leased property. In November 2013, Nam removed the action to federal court pursuant to 28 U.S.C. § 1441.[2] AHC filed an amended complaint, seeking an additional declaration that the alleged oral Joint Venture Agreement was invalid. Nam answered, pleading eight counterclaims which collectively seek a declaration that both the Lease and the Joint Venture Agreement are enforceable and seek money damages for AHC's breaches of both agreements. AHC moved for partial summary judgment, arguing that the Joint Venture Agreement and Lease are void as a matter of law. The district court granted summary judgment in favor of AHC. This appeal followed.

**DISCUSSION**

**I.      Nam's Motion for Additional Discovery**

In response to AHC's motion for partial summary judgment, Nam contended that he had been denied discovery necessary to oppose that motion and submitted an affidavit pursuant to Fed. R. Civ. P. 56(d) describing the

---

[2]  Nam later filed a substantially similar action in the Pennsylvania Court of Common Pleas, which was removed to the United States District Court for the Eastern District of Pennsylvania, and which the federal court stayed pending the resolution of this case.

discovery materials he wanted produced. The district court denied his request. Nam renews this argument on appeal. We review the district court's denial of Nam's Rule 56(d) motion for abuse of discretion. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials "must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) (quotation omitted).

The district court correctly concluded that none of the items specifically requested in Nam's Rule 56(d) affidavit is germane to the issues before the court. For instance, Nam requested documents regarding the investigation of the temporary administrator appointed to run AHC, architectural/construction drawings of the Property, and "different types of documents that go towards valuing the Property and its condition." J.A. at 490. Based on those descriptions alone, these documents do not contain information that would change the outcome of the summary judgment motion seeking a declaration that the Lease

and Joint Venture Agreement are void. Moreover, Nam described the requested material that could potentially be germane in such general terms that he failed to explain with any specificity "how the facts sought are reasonably expected to create a genuine issue of material fact." *Paddington Partners*, 34 F.3d at 1138. For example, Nam requested "communications between the parties, or with the parties and other third-parties, concerning the Property, the Joint Venture Agreement and the Lease." J.A. at 490. He failed, however, to explain his basis for believing that these documents exist. Such bare, generalized assertions cannot justify delaying the resolution of a summary judgment motion. The district court did not abuse its discretion in so ruling.

## II. Choice of Law

In their summary judgment briefing in the district court, the parties disagreed as to which state's law should apply, but on appeal, they do not contest the district court's decision in that regard. Indeed, following the district court's lead, both parties on appeal argue that Pennsylvania law is applicable to the parol evidence issue and New York law to the corporate waste issue. In a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern. *See Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98, 100 (2d Cir. 1981).

Under New York choice-of-law rules, "where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law." *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011); *see also Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'" (quoting *Tehran-Berkeley Civil & Envt'l Eng'rs v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989))). We therefore apply Pennsylvania law to our analysis of the joint-venture dispute and New York law to the lease dispute.

**III.    The Validity of the Lease**

Nam next argues that the district court erred in finding the Lease was void as a gift or as an act of corporate waste because AHC's decision to enter the Lease was protected by the business judgment rule and, in any event, the Lease was supported by valid consideration. "The essence of a claim of gift is lack of consideration and the essence of waste is the diversion of corporate assets for improper or unnecessary purposes." *Aronoff v. Albanese*, 446 N.Y.S.2d 368, 370 (2d Dept. 1982). In New York, "it is settled law that waste or a gift of corporate assets are void acts and cannot be ratified by a majority of stockholders." *Id.*

11

While the actions of corporate directors are ordinarily protected by the business judgment rule, and thus "subject to judicial review only upon a showing of fraud or bad faith," *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) (applying New York law), where a corporate director "has an interest in a decision, the business judgment rule does not apply," *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir. 1995) (applying New York law); *see also Auerbach v. Bennett*, 393 N.E.2d 994, 1001 (N.Y. 1979). A director is considered "self-interested" in a transaction where she "will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally." *Marx v. Akers*, 666 N.E.2d 1034, 1042 (N.Y. 1996); *see also SantiEsteban v. Crowder*, 939 N.Y.S.2d 28, 30 (1st Dept. 2012). "Once a prima facie showing is made that directors have a self-interest in a particular corporate transaction, the burden shifts to them to demonstrate that the transaction is fair and serves the best interests of the corporation and its shareholders." *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984) (applying New York law). If the director(s) fail to carry this burden, the transaction will be deemed void. *See Aronoff*, 446 N.Y.S.2d at 370. These principles apply to closely-held, as well as to publicly-held, corporations. *See Global Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210,

12

214 (1st Dept. 2006); *see also Lewis v. S. L. & E., Inc.*, 629 F.2d 764, 770 (2d Cir. 1980).

We review *de novo* a district court's grant of summary judgment, construing all evidence in the light most favorable to the nonmoving party. *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016).

The district court in this case correctly concluded that the business judgment rule should not apply to the Lease. It is undisputed that Truong was the father of the lessee, that the Property was a corporate asset leased by Truong in his capacity as president and majority shareholder of AHC, and that the terms of the Lease required only nominal consideration for 20-year control over this multi-million-dollar asset. As Nam acknowledges, Truong ran AHC for the benefit of his family and frequently used corporate assets to "help out his family members." Appellant's Br. at 7. Nam concedes that the Lease is similar to other transactions that Truong executed as president and majority shareholder of AHC by which Truong intended "to create financial security for his family and to provide for his children." Appellant's Br. at 8. Truong's corporate decision thus "lacked a legitimate business purpose or w[as] tainted by a conflict of interest." *Amfesco Indus., Inc. v. Greenblatt*, 568 N.Y.S.2d 593, 596 (1st Dept. 1991). As a

13

result, Nam may not invoke the business judgment rule's protection, *id.*, and he now bears the burden of showing that the Lease was objectively fair and "serve[d] the best interests of the corporation and its shareholders," *Norlin*, 744 F.2d at 264.

Nam claims that the "sweat equity" provided by him and his family to develop the Property under the Joint Venture Agreement constituted consideration for the Lease and demonstrates the objective fairness of the transaction. The evidence indicates, however, that the majority of this "sweat equity" was contributed prior to the execution of the Lease. These past contributions could not have counted as present consideration given in exchange for a leasehold interest unless the Lease explicitly expressed that intention. *See* N.Y. Gen. Oblig. Law § 5-1105 ("A promise . . . shall not be denied effect as a valid contractual obligation on the ground that consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed and would be a valid consideration but for the time when it was given or performed."); *see also United Res. Recovery Corp. v. Ramko Venture Mgmt., Inc.*, 584 F. Supp. 2d 645, 656 (S.D.N.Y. 2008) (citing *Umscheid v. Simnacher*, 482 N.Y.S.2d 295, 297 (2d Dept. 1984)). The Lease does not

mention anything about Nam's development of the Property. In fact, the Lease's terms largely prevent Nam from taking steps to develop the Property. Nam's argument regarding what constituted consideration raises no genuine issue of material fact. No disinterested person could find that leasing a valuable real estate property for twenty years in exchange for twenty dollars was a fair or reasonable business decision. *See Meredith v. Camp Hill Estates, Inc.*, 430 N.Y.S.2d 383, 385 (2d Dept. 1980) (holding that "transfer without consideration" of valuable corporate property was "so far opposed to the true interests of [the corporation] as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests." (quotation omitted)). We thus affirm the district court's conclusion that the Lease was void as a gift or act of corporate waste.

**IV.    The Validity of the Joint Venture Agreement**

We now address the purported Joint Venture Agreement. The district court found the alleged Agreement to be unenforceable on grounds that, by operation of the parol evidence rule, the fully integrated Lease discharged any prior-in-time oral agreement relative to the Property.

The Pennsylvania Supreme Court has explained that:

the parol evidence rule forbids the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purpose of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement.

*Am. Bank & Trust Co. of Pa. v. Lied*, 409 A.2d 377, 381 (Pa. 1979).

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

*Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) (quoting

*Gianni v. Russell & Co.*, 126 A. 791, 792 (Pa. 1924)).

An integration clause which states that a writing is meant to represent the parties' entire agreement is . . . a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

*Id.* at 436-37 (citations omitted).

16

Nam contends that the parol evidence rule does not bar the introduction of evidence to show the existence of the purported oral Joint Venture Agreement because the Lease and the Joint Venture are separate agreements. The former, he claims, "creat[ed] a leasehold interest in Nam," while the latter "creat[ed] Nam's rights to compensation (in the form of rents from the future commercial and residential tenancies) in exchange for his efforts in developing and managing the Property for AHC." Appellant's Br. at 25. As did the district court, we find this argument unavailing.

Both agreements address the same subject—the terms of Nam's use and development of the Property. Indeed, Nam's Answer and Counterclaim contains a section titled, "AHC and Nam Enter Into a Lease to Protect Nam's Interests in the Joint Venture." J.A. at 44. Yet the core terms of the Lease and the purported Joint Venture Agreement are in conflict. The Lease's integration clause states in relevant part: "[AHC] and [Nam] hereby agree that this lease sets forth all the promises, agreements, conditions and understandings between [AHC] and [Nam] *relative to the* [*Property*], and that there are no promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth." J.A. at 380 (emphasis added). According to Nam AHC's

primary obligation under the Joint Venture Agreement is to pay for all renovations and maintain the Property, but the Lease provides that AHC is "under no duty to make alterations at the time of letting or at any time thereafter." J.A. at 378. Furthermore, while Nam claims that his consideration for the Joint Venture Agreement is his management and development of the Property, and that he would derive profits from sub-leasing the Property, the Lease states that Nam may not "sub-lease the [Property]," or "[m]ake any alterations, improvements, or additions to the [Property]" without AHC's written consent. J.A. at 378. Enforcing the purported Joint Venture Agreement thus would "vary[] or contradict[] the terms of a contract which both parties intended to represent the definite and complete statement of their agreement." *Lied*, 409 A.2d at 381.

Nam argues as he did below, however, that if the Lease is void as a gift or for lack of consideration, the Lease's terms cannot bar evidence of the Joint Venture Agreement because a void contract has no preclusive effect.[3] The district court rejected this contention, explaining that "a written and integrated

[3] AHC argues that Nam did not preserve this argument because Nam raised it below only in a footnote to his summary judgment memorandum and provided no citations to authority. Because the district court explicitly considered and rejected Nam's argument to this effect, however, we too consider it.

18

contract does not have to be enforceable to bar the terms of prior inconsistent agreements if the circumstances demonstrate that the parties intended the integrated contract to displace prior agreements." Special App'x at 18. The court cited no case law for this proposition but instead cited the parol evidence section of the Restatement (Second) of Contracts. The relevant provision of the Restatement states:

> An integrated agreement that is not binding or that is voidable and avoided does not discharge a prior agreement. But an integrated agreement, even though not binding, may be effective to render inoperative a term which would have been part of the agreement if it had not been integrated.

Restatement (Second) of Contracts, § 213(3) (1981). Comment d to this section further explains that:

> An integrated agreement does not supersede prior agreements if it is not binding, for example, by reason of lack of consideration, or if it is voidable and avoided. The circumstances may, however, show an agreement to discharge a prior agreement without regard to whether the integrated agreement is binding, and such an agreement may be effective.

*Id.* cmt. d. Indeed, one of the Restatement's illustrations corresponding to comment d is analogous to the contract dispute in this case:

> A and B enter into a contract that B will build a house on A's land for a price. Later B offers to add a porch if A will sign a new contract. They then enter into an integrated agreement in which B

promises to build according to the original plans and A promises to pay an extra $2,000. If the integrated agreement is inconsistent with the porch offer, or if it is a completely integrated agreement and the matter of the porch is within its scope, the integrated agreement is effective to discharge the porch offer but is not binding for lack of consideration.

*Id.* cmt. d, illus. 6. The Restatement thus provides support for the proposition that an integration clause in a contract that is void for lack of consideration, but is otherwise valid, still precludes evidence of prior agreements within the scope of that integration clause. Pennsylvania courts, however, do not appear to have adopted the pertinent Restatement provision. *But see Daset Mineral Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 591-93 (Pa. Super. Ct. 1984) (quoting the entirety of § 213 of the Restatement, including subsection (3), but relying upon Restatement provisions other than subsection (3) pertaining to parol evidence). Indeed, our research indicates that this issue would be one of first impression in Pennsylvania.

When faced with a question of state law that, like this one, is dispositive of the case before us and has not yet been decided by the highest tribunal of the state whose law we are applying, it is sometimes prudent and appropriate to certify the question of law to that tribunal. Under Second Circuit precedent, the decision whether to certify is discretionary. *See 10 Ellicott Square Court Corp. v.*

20

*Mtn. Valley Indem. Co.*, 634 F.3d 112, 125 (2d Cir. 2011) ("The rules of this court provide that '[i]f state law permits, the court may certify a question of state law to that state's highest court.'" (quoting 2d Cir. Local R. 27.2(a))). While we recognize that

> [t]he procedure must not be a device for shifting the burdens of this Court to those whose burdens are at least as great[,] . . . the certification procedure is a valuable device for securing prompt and authoritative resolution of unsettled questions of state law, especially those that seem likely to recur and to have significance beyond the interests of the parties in a particular lawsuit.

*Kidney by Kidney v. Kolmar Labs., Inc.*, 808 F.2d 955, 957 (2d Cir. 1987).

The Pennsylvania Supreme Court, for its part, accepts certification petitions from any United States Court of Appeals. *See* 42 Pa. Cons. Stat., Internal Operating Procedures of the Supreme Court, § 8; 204 Pa. Code § 29.451. But that court appears to have a stringent standard, at least as compared with a number of other states, for accepting certification petitions.[4] *Compare* 210 Pa. Code § 3341(c) ("The Supreme Court may accept certification . . . only where there are special and important reasons therefor," i.e., "[t]he question of law is one of first impression and is of such substantial public importance as to require

---

[4] We have never before certified a question to the Pennsylvania Supreme Court, so we base our understanding of its standards for accepting such petitions on the analyses of other courts that have certified questions to it and on our plain reading of Pennsylvania's codified standards.

21

prompt and definitive resolution by the Supreme Court."), *with*, *e.g.*, Nev. R. App. P. 5(a) (permitting the Nevada Supreme Court to answer "questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent"). Indeed, the Third Circuit in one case declined to certify a question of first impression to the Pennsylvania Supreme Court because the issue was "neither sufficiently important nor sufficiently difficult to command the attention of that tribunal." *Travelers Indem. Co. of Ill. v. DiBartolo*, 171 F.3d 168, 169 n.1 (3d Cir. 1999); *cf. Adelson v. Harris*, 774 F.3d 803, 808 (2d Cir. 2014) (noting that "Nevada permits certification where an issue of state law '*may* be determinative,' and that such an approach permits us to certify without, at this point, reaching the underlying constitutional question" (citation omitted)). In light of these standards, we closely examine whether the question with which we are presented here "seem[s] likely to recur and have significance beyond the interests of the parties in a particular lawsuit," *Kolmar Labs.*, 808 F.2d at 957, and thus is one of "substantial public importance," 210 Pa. Code § 3341(c).

For the following reasons, we conclude that the issue in this case involving parol evidence does not meet the standards for certification to the Pennsylvania

22

Supreme Court. The issue may never arise again in Pennsylvania courts, and if it did it would be rare. We recognize, for example, that if AHC was a Pennsylvania corporation, and thus Pennsylvania law applied to the issue of corporate waste, it is quite possible that the district court would have declared the Lease valid and enforceable because it is unclear whether Pennsylvania adheres to a doctrine of corporate waste similar to New York's. *See White v. George*, 66 Pa. D. & C. 4th 129, 149-50 (C.P. 2004) (noting that "there is no definition of [corporate] waste in Pennsylvania case law"). Moreover, lack of consideration alone would not have invalidated this lease given Pennsylvania's Uniform Written Obligations Act, 33 Pa. Cons. Stat. § 6, which provides that a promisor's express statement of his intent to be bound satisfies the requirement of consideration. That is to say, if Pennsylvania law applied across the board in this case, we would be faced with a straightforward application of the parol evidence rule and would likely affirm the district court's determination as to the Joint Venture on that basis.

To be sure, contract disputes between New York and Pennsylvania entities may well arise again, especially given that the states share a border. But the parol evidence issue in this case is recondite; more likely to be found on a law school contracts exam than to be the subject of future litigation in Pennsylvania

courts. Indeed, it appears this issue is novel not only in Pennsylvania but across the country. Neither party was able to cite a case considering the application of the parol evidence rule to a void, or voidable and avoided, contract that is not alleged to be the product of fraud. And our own research did not uncover a single case that has addressed this issue or that has even cited the provision of the Restatement relied upon by the district court here. This fact strongly suggests that the issue is not likely to recur and is not sufficiently important to be addressed on certification.

Nevertheless, we confidently predict that the Pennsylvania Supreme Court would have reached the same result as the district court here if presented with the parol evidence issue before us. *See Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 240 (2d Cir. 2015) (noting that "we normally strive to carefully predict how the highest court of the . . . state [whose law we are applying] would resolve uncertainty or ambiguity in state law," but that certification is appropriate where "we are unable to predict with any confidence how the . . . courts [of that state] would evaluate" the issue at hand). Notwithstanding the novelty of our precise issue, as we explain below, the Pennsylvania Supreme Court has circumscribed, rather than expanded, existing

exceptions to the parol evidence rule. That court, moreover, often relies upon the guidance of the Restatement in deciding questions of Pennsylvania contract law.

In his appellate brief, Nam cites three cases to support his contention that an integration clause in a voided contract has no operative effect and therefore cannot bar evidence of a prior-in-time oral agreement. *Mellon Bank Corp. v. First Union Real Estate Equity & Mtg. Invs.*, 951 F.2d 1399 (3d Cir. 1991); *Betz Labs., Inc. v. Hines*, 647 F.2d 402 (3d Cir. 1981); *Murray v. Lichtman*, 339 F.2d 749 (D.C. Cir. 1964). None of these cases is on point. The *Murray* court held that a party could attempt to prove that a written contract was void for lack of consideration by introducing parol evidence to show that he had completely performed his obligation under a prior oral agreement containing substantially similar terms as the written contract. *Murray*, 339 F.2d 751-52. In contrast, Nam does not seek to introduce evidence of the Joint Venture Agreement to show that the Lease is void for lack of consideration, but instead to supplement and vary its terms.

*Mellon* and *Betz* provide some support for admitting parol evidence to strike down a written contract (and the integration clause contained therein) that is alleged to be tainted by fraud in the inducement. *See Mellon*, 951 F.2d at 1408; *Betz*, 647 F.2d at 405-08. This principle is inapplicable here, however, because

Nam has not alleged that the Lease was the product of fraud. Moreover, it appears that Pennsylvania no longer follows the fraud-in-the-inducement exception to the parol evidence rule. *See Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996) ("The Supreme Court of Pennsylvania found that the parol evidence rule barred consideration of prior representations concerning matters covered in the written contract, even those alleged to have been made fraudulently, unless the representations were fraudulently *omitted from the contract*." (citing *HCB Contractors v. Liberty Place Hotel Ass'n*, 652 A.2d 1278, 1279 (Pa. 1995))); *see also Bray v. Dewese*, No. 07-4011, 2008 WL 623824, at *2 & n.7 (E.D. Pa. Mar. 6, 2008) (explaining evolution and abandonment of fraud-in-the-inducement exception to parol evidence rule in Pennsylvania).

While the Pennsylvania Supreme Court has not ruled on the preclusive effect of an integration clause held to be void as an act of corporate waste, that court has carved out only a few discrete exceptions to the parol evidence rule. Because the factual scenario here does not fall within one of these exceptions—where one party has alleged that the written contract is the product of "fraud, accident or mistake," *Yocca*, 854 A.2d at 437—we conclude that the parol evidence rule applies in this case and that the integration clause in the Lease

26

retains its preclusive effect. *See Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) ("[P]arol evidence of prior representations is inadmissible as to a matter covered by the written agreement with an integration clause, *unless* the parties agreed that those representations would be added to the written agreement but they were omitted because of fraud, accident or mistake." (emphasis added) (quotation omitted)).

This conclusion is bolstered by the fact that the Pennsylvania Supreme Court generally adopts the principles of the Restatement of Contracts. *See, e.g.,* *Harrison v. Cabot Oil & Gas Corp.*, 110 A.3d 178, 185 (Pa. 2015) (relying upon Restatement (Second) of Contracts § 250 in deciding issue of first impression certified by Third Circuit regarding repudiation of leases); *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 995 (Pa. 2014) (quoting definition of expectation interest from Restatement (Second) of Contracts § 344(a)); *Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1200-03 (Pa. 2012) (citing and adopting Restatement (Second) of Contracts § 195(1)). Of particular importance here, the court has relied upon the Restatement in shaping the parameters of Pennsylvania's parol evidence rule and the exceptions thereto. *See Rempel v. Nationwide Life Ins. Co.*, 370 A.2d 366, 370-71 (Pa. 1977) (applying first Restatement of Contracts); *Hollander v. Friedman*,

59 A.2d 892, 894 (Pa. 1948) (same); *see also Daset Mineral Corp.*, 473 A.2d at 591-93 (discussing in depth and relying upon several provisions of the Restatement (Second) of Contracts pertaining to parol evidence, including § 213).  We see no reason why the Pennsylvania Supreme Court would not follow its ordinary course and apply § 213(3) of the Restatement to the facts of this case.  We therefore affirm the district court's grant of summary judgment to AHC with respect to the purported Joint Venture Agreement.

## CONCLUSION

For the foregoing reasons the district court's decision is **AFFIRMED**.