19-3214
*Timsina v. United States*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of November, two thousand twenty.

PRESENT:
> DENNIS JACOBS,
> GERARD E. LYNCH,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

_____

Som N. Timsina, an individual, Bhakti R. Adhikari, an individual, Central Market Winooski, LLC, Vermont Limited Liability Company,

> *Plaintiffs-Appellants*,

v.                                                                              No. 19-3214

United States of America,

> *Defendant-Appellee.*

_____

**For Plaintiffs-Appellants:** ANDREW Z. TAPP, Metropolitan Law Group, PLLC, Brandon, FL.

**For Defendant-Appellee:** MELISSA A.D. RANALDO (Julia L. Torti, Gregory L. Waples, *on the brief*), Assistant United States Attorneys, *for* Christina E. Nolan, United States Attorney for the District of Vermont, Burlington, VT.

Appeal from the judgment of the United States District Court for the District of Vermont (Christina Reiss, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Som N. Timsina, Bhakti R. Adhikari, and their store, Central Market Winooski, LLC ("Central Market") (collectively, "the Market"), appeal from the district court's order denying the Market's request for additional discovery and granting summary judgment in favor of the government in connection with an administrative decision by the Food and Nutrition Service ("FNS") to disqualify their store from participating in the Supplemental Nutrition Assistance Program ("SNAP"). On appeal, the Market contends that the district

2

court (1) abused its discretion by denying the Market's request to depose FNS officials and to probe their investigative protocol for potential SNAP violations; and (2) erred in granting summary judgment to the government because the court misconstrued the Market's burden to raise genuine disputes of material facts regarding the suspicious SNAP transactions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I.** ***The district court did not abuse its discretion by denying the Market's request for additional discovery.***

We review a district court's denial of a Rule 56(d) motion for additional discovery for abuse of discretion. *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016). "A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." *Id.* (internal quotation marks omitted).

The Market asserts that the district court abused its discretion when it denied the Market's requests for discovery, including depositions, regarding the FNS's investigative protocol for detecting potential SNAP violations. But that evidence would not have been "germane to" the Market's opposition to the government's motion for summary judgment. *Id.* The Market's burden in overcoming the government's motion was to raise a genuine issue of material fact regarding whether it had engaged in SNAP benefits trafficking – a not uncommon form of fraud whereby SNAP recipients sell their benefits for cash, typically at a deep discount, to food retailers who camouflage the transaction to look like legitimate food purchases. *See, e.g.*, *Irobe v. U.S. Dep't of Agric.*, 890 F.3d 371, 375 (1st Cir. 2018); *see also* 7 C.F.R. § 271.2 (defining SNAP "[t]rafficking" as including "[t]he buying, selling, stealing or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food"). Depositions directed toward uncovering the FNS's internal procedures and decision-making were simply not relevant to meeting that burden, since the district court was required to conduct its own independent review of the underlying data. *See* 7 U.S.C. § 2023(a)(15). Accordingly, the district court did not abuse its discretion by denying the Market's request for additional discovery.

**II.**   *The district court properly granted summary judgment to the government.*

"We review a grant of summary judgment de novo, examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant."   *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 97 (2d Cir. 2020) (internal quotation marks omitted).   Under the Food and Nutrition Act of 2008 ("FNA"), judicial review of the FNS's decision to disqualify an entity from participating in SNAP is "a trial de novo . . . in which the court shall determine the validity of the questioned administrative action in issue."   7 U.S.C. § 2023(a)(15).[1] This review "requires the district court to reexamine the agency's decision on a fresh record, rather than determining whether the administrative decision was supported by substantial evidence."   *Ibrahim v. United States*, 834 F.2d 52, 53 (2d Cir. 1987).[2]

---

[1]  The FNA's judicial review provision was originally enacted as part of the Food Stamp Act of 1964.   *See* Pub. L. No. 88-525, § 13, 78 Stat. 703, 708 (1964).

[2]  This Court has not yet decided which party bears the burden of proof at a trial under § 2023(a)(15) – *i.e.*, whether the Market must prove by a preponderance of the evidence that the disqualification decision "is invalid," 7 U.S.C. § 2023(a)(16), or the government must prove "the validity of the questioned administrative action," *id.* § 2023(a)(15).   On the one hand, the disqualified store is cast as the plaintiff or claimant in the action, and thus the party that more naturally bears the burden of proving that (in this case) it was wrongly disqualified.   *See Irobe*, 890 F.3d at 378.   On the other, the governing statute providing for judicial review, 7 U.S.C. § 2023(a)(15), somewhat unusually provides for a "trial de novo" in the district court, and directs that "the court shall determine the validity of the questioned administrative action in issue," thus appearing to contemplate a do-over of sorts in the district court, in which the government would have to prove a violation.   *Cf. Spano v. Western Fruit Growers*, 83 F.2d 150, 152 (10th Cir. 1936) ("'Trial de novo' is generally held to mean a trial anew of the entire controversy, including the hearing of evidence

5

The Market claims that the district court erred by granting summary judgment to the government because the Market's burden should not have been "to prove *each and every transaction* to be legitimate, but rather to provide evidentiarily supported explanations that could legitimately account for the presence of the transaction patterns cited by the [FNS]."   Market's Br. at 12. Under the FNA, the FNS may permanently disqualify a store "upon . . . the first occasion" of SNAP benefits trafficking.   7 U.S.C. § 2021(b)(3)(B).   Thus, on the assumption that the Market bore the burden of proof in this action, it faced the difficult burden of establishing that it had not engaged in any such transactions. And in this case, the government presented the district court with a considerable body of circumstantial evidence demonstrating that the Market had engaged in SNAP benefits trafficking, including 515 transactions that were flagged as suspicious by the FNS's national electronic database because they (1) were processed in unusually short time-frames, (2) depleted the majority of a

as though no previous action had been taken.").   The Market, however, does not challenge the district court's determination that the burden rests with the Market.   *See Timsina v. United States*, No. 17-cv-00126 (CR), 2019 WL 3254689, at *8 (D. Vt. July 19, 2019).   The Market has therefore waived this argument on appeal.   *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").   Accordingly, we assume, without deciding, that the district court correctly placed the burden of proof on the Market.

household's monthly benefits in one or two transactions, or (3) were excessively large in comparison to other Vermont grocery stores of a similar size.

In an attempt to rebut this overwhelming circumstantial evidence, the Market offered several general explanations for the suspicious transactions, including that Central Market regularly sold a number of expensive SNAP-eligible items, that its customers frequently shopped together in large groups, and that many of its customers were from large refugee households that purchased large amounts of food in a single transaction. But even after considering these conclusory rationalizations, the district court determined that many of the transactions could not be explained or justified. In one particularly noteworthy example cited by the district court, a household "spent $159.77 at Costco," the retail warehouse giant, "approximately one hour before spending $411.00 at Central Market," a store with about 1,500 square feet of shopping space, only one cash register, one two-foot-by-three-foot checkout counter, and one optical scanner. *Timsina v. United States*, No. 17-cv-00126, 2019 WL 3254689, at *4 & n.4, *7 (D. Vt. July 19, 2019). Similarly, the district court considered other suspicious transactions and found that there was "no plausible way" that Central Market could have processed "$292.90 worth of eligible food items in two minutes and

forty-eight seconds" or "$278.06 worth of eligible food items in one minute and forty-four seconds."[3]   *Id.* at *10–11.   And "[a]lthough Central Market's inventory reveals ten products that were priced between $20.00 and $45.00," the district court found that these few high-dollar items "[did] not explain why customers frequently made purchases worth hundreds of dollars."   *Id.* at *13.   Indeed, there were at least four SNAP-authorized stores located near Central Market that offered similar specialty food products and were frequented by the Market's customers, and yet none of them displayed the same types of suspicious transactions.   App'x at 774; *see also Irobe*, 890 F.3d at 379 ("[T]he factfinder may reasonably infer trafficking when the redemption data shows that a store regularly processes purported SNAP transactions for significantly higher per-transaction amounts than nearby stores offering similar wares.").

So even if the Market's proffered explanations could account for some of the suspicious transactions, there still remained ample circumstantial evidence to support the inference that the Market had trafficked in SNAP benefits.   The

[3] The record reveals a host of even more suspicious transactions not explicitly cited in the district court's decision.   In one such example, exactly $150.00 worth of food items was processed in thirty seconds. App'x at 155.   In another, the same household made one purchase followed by a second purchase one minute and twenty-seven seconds later for exactly $100.00.   *Id.* at 158.   These transactions are doubly suspicious due to their unusually short processing times and round-number totals.

district court's reliance on this circumstantial evidence was not improper. As we have emphasized time and again, "[c]ircumstantial evidence . . . is of no lesser probative value than direct evidence," *United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989), particularly when, as here, it is the only proof likely to be available, *see, e.g.*, *New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 594 (2d Cir. 2019), *cert. denied*, --- S. Ct. ----, No. 19-1306, 2020 WL 5882264 (Oct. 5, 2020); *see also* 7 U.S.C. § 2021(a)(2) (authorizing FNS to disqualify a store on the basis of "inconsistent redemption data" and SNAP "transaction report[s]"). Accordingly, the district court properly granted summary judgment in favor of the government because no reasonable factfinder could conclude that the Market established that it had not engaged in any transactions in violation of the regulations governing the SNAP program.

\*    \*    \*

We have considered the Market's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court